Commonweath *v.* Patch, Appellant.

Argued March 10, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUN-
NINGHAM, BALDRIGE and GRAFF, JJ.

*William A. Gray,* for appellant.—The least misapprehension or influence causing a defendant to plead guilty when he had any defense at all should be sufficient cause to permit a change of the plea of guilty to not guilty: Krolaze v. People, 224 Ill. 546; Deloach v. State, 77 Miss. 691.

*Harry Felix,* Assistant District Attorney, and with him *John Monaghan,* District Attorney, for appellee. —An order of court which is expressly made subject to further orders is not reviewable: Hope Hose Co.'s Appeal, 2 W. N. C. 451; Com. v. Blatt, 165 Pa. 213.

OPINION BY TREXLER, P. J., April 18, 1930:

On the 23rd of September, 1929, the defendant was arraigned and pleaded guilty of the charge of forgery. On the 21st of November, 1929, before sentence, he presented a petition stating that he had been in custody since the month of January, 1929, that he was brought into court on September 23, 1929, at which time, it had been agreed by petitioner's counsel, the attorney representing the private prosecution, and the assistant district attorney in charge of the case for the Commonwealth, that a nol. pros. should be entered; that thereafter the assistant district attorney withdrew his consent and insisted that defendant should immediately proceed to trial for which no preparation had been

made by the petitioner and that, he entered pleas of guilty, having been assured by his attorney that sentence upon said pleas would be suspended and the petitioner placed upon probation; that the petitioner was not guilty of the offense charged, but that he pleaded guilty because of his ill health and in order that the imprisonment which he was suffering pending his trial might be ended and that in view of the above facts, he asked that he might withdraw his pleas of guilty and enter pleas of not guilty.

On the same day, the court refused the prayer of the petitioner and the defendant was called for sentence. What was then stated by counsel for the private prosecutor to the court is not disclosed. The attorney for the defendant objected to the sentence being imposed upon the facts which had been narrated by counsel. Counsel for the defendant offered in evidence a letter from the prosecutor, authorizing the defendant to use notes endorsed in blank by him, up to one million dollars. It would seem, in one aspect of the case, that the question narrowed down to the fact whether Patch had exceeded his authority and issued notes in fraud of his principal, for the statement of the attorney for the private prosecutor to the court was that he had told Patch, ''If you have any notes of Mr. McKean, of any kind whatsoever, I want to warn you now, you use them at your peril; and you are not to use them,'' and that afterwards, Mr. Patch negotiated two of those notes in Pittsburgh. The defendant was called and testified that he came into court with the expectation of having a nol. pros. entered and with that prospect in view, the matter had been discussed with counsel for the prosecutor.

It was shown that defendant's physical condition was bad. There is no question that he was in a very grave state, suffering from duodenal ulcers and hemorrhages with probable leakage into the abdominal cavity. There was further discussion and the court re-

ferred to several cases where defendants were pardoned on account of ill health and very quickly became well after the pardon was given. The court had stated before that he thought there was no question about defendant's physical condition. The court expressed the view that the man should be sentenced and the pardoning board might pass upon his condition later and thereupon sentenced the defendant on each of the three indictments; to pay a fine and costs, restore the property and to undergo imprisonment in the Eastern Penitentiary for not less than four years, nor more than eight years, the sentences being cumulative. This was followed by an animated colloquy between the court and counsel for the defendant which it is not necessary to set out here. The court stated: "The sentences hereby imposed are, however, suspended, and the defendant is discharged upon his own recognizance, and is permitted to return to the Samaritan Hospital; and to remain there until there has been certified to the court by doctors appointed by the district attorney, or by the court, that his condition is such as justifies his removal to the Eastern Penitentiary."

(1) The Commonwealth raised the question whether this was a final order of the court, or merely interlocutory. We regard it as final. No further action of the court was necessary to put it in effect. The defendant was to have no day in court. With a doctor's certificate that his condition was such as justified his removal to the Eastern Penitentiary, the sentence was automatically effective. He was not set at liberty during good behavior, but was to remain in the hospital until it was safe to remove him to the penitentiary.

If in the course of time he was removed to the Eastern Penitentiary, what order of the court could he assign for error? The time for his appeal from the sentence would then have elapsed and there was no sub-

sequent sentence of the court to which he could take exception.

(2) The other question we are to consider is whether the denial of the right to withdraw the plea was an exercise of sound discretion on the part of the lower court? It appears that the defendant was miserably sick, suffering from a painful and apparently incurable ailment. On January 6, 1929, his condition was such that permission was granted to take him to the Samaritan Hospital. He was there continuously up to the time the court sentenced him. He has lost weight and has had fevers and repeated fainting attacks and his condition required attention. A policeman was kept in his room constantly and under these conditions, he was finally brought to court as already stated, on September 23d, and at that time was laboring under the mistaken idea that a nol. pros. would be entered and upon the withdrawal of such agreement by the assistant district attorney, he was confronted with the alternative of pleading guilty or immediately proceeding to trial and he thereupon entered pleas of guilty upon the assurance by his attorney that a sentence upon said plea would be suspended and the petitioner placed upon probation. He might have asked for a continuance, but evidently in his weakened' condition, he was anxious to end the matter. When he learned that the court would not suspend the sentence, he then presented his petition to withdraw his pleas and enter a plea of not guilty. We are aware that the matter is one that is within the sound discretion of the lower court, but we are all of the opinion that the prayer of the petitioner should have been granted.

The rule of law as stated in 16 C. J. 398, "The withdrawal of the plea of guilty should not be denied in any case where it is in the least evident that the ends of justice will be subserved by permitting not guilty to be pleaded in its place." "Therefore the court ordinarily will permit a plea of guilty to be withdrawn

if it fairly appears that the defendant was in ignorance of his rights and of the consequences of his act, or was influenced unduly and improperly either by hope or by fear in the making of it, or if it appears that the plea was entered under some mistake or misapprehension.''

There are numerous cases in the footnotes supporting the text. (See also 20 A. L. R. 1445.) It would seem that the practise in the various states as well as in England is to exercise liberality in the withdrawal of a plea of guilty, wherever there has been a mistake or even a misapprehension on the part of the defendant.

The action of this court in reversing the judgment will not be a discharge of the prisoner, but he will be compelled to stand trial before a jury. Where there is any doubt as to the prisoner's guilt, that should be the place where that doubt may be determined for or against him.

The judgment of the lower court is reversed with a new venire.