## Commonwealth *v.* Todd, Appellant.

Argued April 16, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Carl Blanchfield* and *John J. Malik, Sr.*, for appellant.

*William Claney Smith,* Assistant District Attorney, with him *Edward C. Boyle,* District Attorney, for appellee.

OPINION BY HIRT, J., June 11, 1958:

The defendant was charged, in the first count of an indictment, with the unlawful possession of heroin and in the second count with the unlawful sale of the drug in violation of the Act of June 19, 1953, P.L. 290, 35 PS §865, amending prior legislation. On June 10, 1957, he pleaded guilty to the two charges before Judge CERCONE in open court. The court immediately went into a hearing to develop the circumstances attending the commission of the crimes. The hearing was continued to June 13, 1957, at which time the defendant moved for leave to withdraw his plea of guilty and to substitute a plea of not guilty for trial of the charges by a jury. The court peremptorily refused the motion and at the conclusion of the hearing on that day sentenced the defendant to pay a fine of $7,500 and to undergo imprisonment for a flat term of thirty years, "effective as of the expiration of [his] present sentence." The sentence referred to, had been imposed by a United States District Court in Ohio for a term of 10 years imprisonment in a Federal Penitentiary. In the course of the hearing before the sentencing judge the defendant frankly admitted that on November 14, 1952 he had pleaded guilty in Allegheny County to possession of narcotic drugs and was placed on probation for one year; and also that on April 28, 1953 he had been convicted of unlawful possession of narcotic drugs and was sentenced to imprisonment in the Allegheny County Jail for a term of not less than 11½ nor more than 23 months. The sentence of defendant to the term of imprisonment involved in the present appeal was intended as a

sentence as a third offender under the 1953 amendment, supra.[1]

We may take it as settled law that an application to withdraw a plea of guilty and to enter a substitute plea of not guilty (under the Act of April 15, 1907, P. L. 62, 19 PS §241) is addressed to the discretion of the court before which the plea is entered, and unless there has been a clear abuse of that discretionary power, its action may not be reversed on appeal. Cf. *Commonwealth v. Senauskas,* 326 Pa. 69, 191 A. 167. In our decision in *Com. v. DiPaul,* 122 Pa. Superior Ct. 53, 184 A. 480, upon which the present appellant heavily relies, we enumerated some of the reasons upon which the withdrawal of a plea of guilty has been permitted, thus: where the plea had been entered in ignorance or under a misconception of the nature of the charge; where not made freely and voluntarily; where entered through fear or by mistake; or where the plea was induced by threats or by promises of leniency; and where the defendant was insane when the offense was committed; where the defendant believed that he was pleading guilty to a less serious crime than charged, or otherwise was inconsiderately entered. In the *Senauskas* case, supra, the defendant's motion to withdraw his plea was properly refused because, contrary to his contention, there was no proof of a prior

---

[1] There was error in the sentence of the defendant to a flat term since the penalty prescribed by the 1953 amendment, supra, contemplated a sentence of "an imprisonment of not less than ten (10) years and not exceeding thirty (30) years." Laub, Pennsylvania Manual, Civil and Criminal Penalties, §9 and p. 195; Cf. *Com. ex rel. Monaghan v. Burke,* 169 Pa. Superior Ct. 256, 82 A. 2d 337. The error becomes unimportant however since the majority of us are of the opinion that the judgment of sentence must be vacated because of the court's refusal to allow the defendant to withdraw his plea of guilty.

agreement with the trial court, that on conviction of the charge of murder "there would be no electrocution." In the *DiPaul* case, supra, the defendant on pleading guilty, testified "freely, fully and voluntarily" in confession of his guilt of the crime of arson. He also testified that his statement in court was made freely and of his own free will, and also that after his arrest he had been accorded good treatment at police headquarters by all officers. He had made this same statement to an uncle who came to the barracks at his request. He also had voluntarily given the same statement of the details of his connection with the crime to the district attorney. At the hearing on his subsequent petition to withdraw his plea he testified that at the police barracks he had been threatened with physical torture, had been refused food and that he had entered a plea of guilty through fear. The court below found this testimony wholly incredible and we, on the same conclusion, stated: "It would be trifling with the administration of criminal law to allow the defendant in this case to withdraw his plea of guilty."

The undisputed factual situation here presented distinguishes the present proceeding from the *DiPaul* and *Senauskas* cases, supra. There can be no question that the federal authorities had been able to make a number of "buys" from Todd, and the sentence he was serving in a federal penitentiary had been imposed on his conviction of violation of the federal narcotics law. After defendant's arrest in the present case both the federal narcotic agent and the Pittsburgh police enlisted his aid in an effort to apprehend and convict violators of the narcotic drug law in Allegheny County. Thomas E. McGuire, a Federal Narcotice Agent appeared at the hearing before the judge in the present proceeding. McGuire stated that Todd agreed to cooperate and that he did voluntarily appear before a

grand jury and testified against offenders who were known to be two of the major sources of narcotic drugs in Pittsburgh. Todd also testified in the federal trial courts, and at the time when he entered the present plea of guilty in the State court there were still further cases pending in the federal courts in which he would be called as a witness. Because of Todd's cooperation in these respects, McGuire requested Judge CERCONE to postpone sentencing Todd until after the pending federal cases were disposed of; this request was refused. The defendant Todd undoubtedly agreed to testify in these federal cases as a prosecution witness with the expectation of getting some benefit in return. A meeting was held in the office of the District Attorney of Allegheny County which was attended by an assistant district attorney assigned to the Todd case, and also by the above Federal Narcotic Agent, the City's Police Narcotic Officer and the defendant's counsel. It would appear that this meeting resulted in an agreement that on defendant's plea of guilt the representatives of the district attorney's office would recommend to the sentencing judge that in view of defendant's cooperation, any sentence imposed would at least run concurrently with the federal sentence then being served by him. There was only an equivocal denial of the fact of such agreement by the assistant district attorney, who was present at the meeting; he testified that he was only a spectator at the meeting. No recommendation was actually made to the court prior to the sentence of defendant and when defendant's counsel suggested that the plea had been entered in reliance upon an agreement, the judge said: "Well of course, Mr. Malik, in the first place the Court is not interested in any understandings you had with anybody and we cannot see why this Court should in any way be in-

terested in what understandings you have had with other Counsel or Counsel may have had between themselves." Thereupon the court, having previously refused to allow the defendant to withdraw his plea, imposed the sentence which if valid, would have amounted to a life sentence of this defendant at his then age.

The defendant's plea of guilty was induced by promises of a recommendation of leniency at least to the above extent and on that ground the majority of us are of the opinion that the sentencing judge is clearly chargeable with an abuse of discretion in refusing to allow the defendant to withdraw his plea. In *Commonwealth v. Patch,* 98 Pa. Superior Ct. 464, it is said : ". . . that the practice in various states as well as in England is to exercise liberality in the withdrawal of a plea of guilty, wherever there has been a mistake or even a misapprehension on the part of the defendant." In that case the defendant pleaded guilty to forgery on an understanding with the district attorney that he would be placed on parole or would receive a suspended sentence. The court refused to allow defendant to withdraw his plea and imposed three cumulative sentences of imprisonment of from 4 to 8 years. We reversed the judgments with a venire. In *Commonwealth v. Senauskas,* supra, a murder case, it was held that a bargain or promise by a judge as to what the judgment of sentence will be, irrespective of what the evidence will indicate, although amounting to judicial misconduct is not binding on the judge.[2] But his failure to comply with such promise gives to the defendant the right to withdraw a plea of guilty and to go on trial before a jury on a plea of not guilty. The authorities in the federal courts are to the same effect. In *Roberto v. United*

---

[2] Cf. Authorities cited in margin at page 72.

*States,* 60 F. (2d) 774, it is said that "If such plea is inadvisably [sic] made . . . the accused should not be held strictly to his plea." *Ward v. United States,* 116 F. (2d) 135, is parallel with the instant case, in essentials on the factual situation presented. It was there held that since the defendant was induced to plead guilty by promises of government counsel that punishment would be moderated and where the court indicated that it did not intend to follow the recommendations, the denial of leave to withdraw the plea of guilty was held to be reversible error. Cf. also *United States v. Paglia,* 190 F. (2d) 445, opinion by LEARNED HAND, J.

On the present record the majority of us believe that the defendant was entitled to the relief asked for.

Judgment of sentence reversed with a venire.

RHODES, P. J., dissents.