**UNITED STATES of America ex rel. John JACKSON**

v.

**William J. BANMILLER.**
**Misc. No. 2188.**

United States District Court
E. D. Pennsylvania.

Sept. 30, 1960.

**514**

Alan J. Swotes, Philadelphia, Pa., for John Jackson, relator.

Charles L. Durham, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

EGAN, District Judge.

The relator, a prisoner in the Pennsylvania State Correctional Institution at Philadelphia, petitions this Court, in forma pauperis, for a writ of habeas corpus under the provisions of 28 U.S. C. § 2241(c) (3), having exhausted his state remedies [1] as required by 28 U. S.C. § 2254. We appointed able counsel to represent him gratuitously, and he has done a commendable job. A hearing has been held on the merits of the relator's claims at which the relator and counsel, and counsel for the respondent, were present, with full opportunity to both sides to present evidence and make oral and written argument.

The relator was arraigned in December 1957 before the Court of Quarter Sessions of Philadelphia County on three charges of aggravated robbery, bills Nos. 1052, 1053, and 1091, August Sessions 1957. Upon advice of his own counsel, he pleaded guilty to all three bills. When he was brought before the court in April 1958 for sentencing, he and his counsel requested leave to withdraw the guilty pleas as to bills Nos. 1053 and 1091. The request was denied and the court proceeded to sentence the relator to consecutive terms of ten to twenty years, five to ten years, and five to ten years, respectively, on the three bills, for a total of twenty to forty years. The relator now contends that his constitutional rights were violated by the sentencing Judge's refusal to permit him to withdraw his guilty pleas.[2]

Under Pennsylvania law, an accused may withdraw a guilty plea at any time before sentence, by leave of

---

1. Commonwealth ex rel. Jackson v. Banmiller, C. P. Phila. Co., 19 Pa.Dist. & Co. R.2d 56, 155 A.2d 632, affirmed per curiam 1959, 190 Pa.Super. 564, 155 A. 2d 632, allocatur refused 190 Pa.Super. xxvii, certiorari denied 1960, 362 U.S. 971, 80 S.Ct. 957, 4 L.Ed.2d 901.

2. The original petition to this Court offered the further argument that the sentence was invalid because it was imposed in a different term of court from the term in which the relator pleaded guilty. The relator's court-appointed counsel concedes that this argument is without merit. Commonwealth ex rel. Holly v. Ashe, 1951, 368 Pa. 211, 82 A. 2d 244.

court. 19 P.S. § 241. The court's action in refusing to permit withdrawal of the plea will not be upset unless there is a showing of a "clear abuse" of discretion. Commonwealth ex rel. O'Niel v. Ashe, 1940, 337 Pa. 230, 10 A.2d 404; Commonwealth v. Todd, 1958, 186 Pa. Super. 272, 275, 142 A.2d 174. In the latter case, the Superior Court listed some of the reasons upon which the withdrawal of a guilty plea may be permitted:

"* * * where the plea had been entered in ignorance or under a misconception of the nature of the charge; * * * where entered through fear or by mistake * * * where the defendant believed that he was pleading guilty to a less serious crime than charged, or otherwise was inconsiderately entered." 186 Pa.Super. 272, 275, 142 A.2d 174, 176.

The court went on to say:

"* * * the practice in various states as well as in England is to exercise liberality in the withdrawal of a plea of guilty, wherever there has been a mistake or even a misapprehension on the part of the defendant." 186 Pa.Super. 272, 278, 142 A.2d 174, 177.

At the hearing before us, we heard the testimony of the relator, his counsel at the criminal proceedings, and the detective who secured the relator's written confession to the three offenses charged. In addition we were able to examine the transcript of the proceedings in the state court, parts of which were read into the record.

The undisputed facts are as follows: In July 1957, Detective Theodore Jordan of the Philadelphia Police Department was investigating a series of robberies involving 12 or 13 suspects, one of whom was the relator, John "Snooks" Jackson. Detective Jordan interviewed Jackson, the result of which interview was that Jackson signed a typewritten confession in which he admitted participation in three armed robberies. These robberies became the subjects of the three bills of indictment against Jackson, numbered as above. Jackson's defense counsel, when presented with this confession by the assistant district attorney prosecuting the case, decided that the best course of action would be for Jackson to plead guilty. At arraignment, in the presence of and on the advice of his counsel, Jackson pleaded guilty to all three bills.

At the hearing to impose sentence, Jackson repudiated his confession, claiming that he had neither written it nor read it. He said that it had already been prepared when he went to see Detective Jordan and that "Jordan told me to sign this and he would help me. I said those other two robberies, I wasn't on and I was nowhere near it. He said, 'That's all right, this is just for the record' —and he asked me to sign." Jackson testified before the Quarter Sessions Court that he told Jordan that he had been involved in one of the three robberies, but had had nothing to do with the other two. He said he pleaded guilty upon the advice of counsel that if he didn't plead guilty he might get hurt.

Frank J. Fortunato, Esquire, a member in good standing of the Philadelphia bar, represented Jackson at arraignment and at sentencing. At the sentencing hearing he moved to change the pleas to bills Nos. 1053 and 1091 to not guilty. He stated to the Quarter Sessions Court that he had advised Jackson to plead guilty on the basis of the confession shown to him by the assistant district attorney. Since Jackson was now repudiating that confession, Mr. Fortunato wanted to change the plea, pointing out that no evidence had been introduced against Jackson.

At the hearing, the assistant district attorney read the statement which the defendant had signed. The statement admitted to participation, along with two or three other defendants, in three armed robberies. It contained several discrepancies in which the defendant Jackson referred to himself as another participant:

"We each got $27.00 apiece, Julius Mercer, 'Snooks' Jackson, Williams and myself."

"We went to the grocery store, we picked up Julius Mercer and 'Snooks' Jackson on the way. When we got to this store, Williams and I got out of the car and I took Williams' gun, walked into the store and told the man it was a holdup. The man gave me $75.00. 'Snooks' Jackson and Julius Mercer were outside as lookouts in Mercer's car. * * * We got about $18.00 apiece, Julius Mercer, 'Snooks' Jackson, Williams and myself."

In addition to reading Jackson's confession, the assistant district attorney referred to the statement of another defendant, Joseph Williams, and said that it corroborated Jackson's statement. The Court then sentenced Jackson on bill No. 1052 to a term of ten to twenty years, on No. 1053 to five to ten years, and on No. 1091 to five to ten years, the sentences to be consecutive, for a cumulative sentence of twenty to forty years. No appeal was taken.

The relator now charges the Quarter Sessions Court with an abuse of discretion in refusing to permit the withdrawal of the guilty pleas. At the hearing before us, the relator testified substantially as follows: He had not been involved in any of the three robberies, except that he had unwittingly received $3 which was part of the money stolen at one robbery. He understood from Detective Jordan that he was being charged with receiving stolen goods, and it was with this understanding that he signed the statement, which he did not read. At arraignment, still under the impression that he was charged only with receiving stolen goods, he pleaded guilty on Mr. Fortunato's advise. Subsequently he learned that he had been charged with robbery and on April 14, 1958, the day of sentencing, he told Mr. Fortunato that he wanted to change his plea on all three bills, explaining the circumstances of his signing the statement. He was willing to admit to one charge of receiving stolen goods, but not to robbery.

Mr. Fortunato testified that he had informed Jackson of the specific charges against him, in accordance with his usual procedure in representing criminal defendants.

Detective Jordan testified that Jackson's statement was a verbatim transcript typed by a police stenographer while Jackson was being interrogated by another detective. He said that Jackson read the statement and then signed it. He denied Jackson's claim that the statement was prepared before Jackson arrived to be interviewed. He could not explain the various references to "Snooks Jackson" in the confession.

The relator's counsel argued that the assistant district attorney's comments that the confession of defendant Joseph Williams corroborated the statement signed by the relator was erroneous and prejudicial in that Williams' confession implicated one *Willie* Jackson and not John Jackson, the relator.

■■ With all due respect to an able Judge, we feel that the refusal of the Quarter Sessions Court to permit withdrawal of the guilty plea as to bills Nos. 1053 and 1091 [3] was a clear abuse of discretion. The defendant's repudiation of his confession, his counsel's explanation that his recommendation of a guilty plea was predicated on the confession, and the obvious discrepancies in the confession (not to mention the fact that the Commonwealth had introduced no evidence against the defendant) were sufficient to impose an obligation on the court not to deny the requested change of plea

3. We feel that there was no abuse of discretion in refusing to permit a change of plea as to bill No. 1052, since the request made to the Quarter Sessions Court by the defendant and his counsel specified only bills 1053 and 1091. It was not until the hearing before us that the relator indicated that he had been confused at the Quarter Sessions hearing and should have requested a change of plea on all three bills.

summarily. In our view, the defendant was entitled at least to an inquiry into the circumstances surrounding the signing of the confession, which inquiry would probably have supported the defendant's repudiation of his confession and of his guilty plea.

At any rate, we feel that there was sufficient indication to the Quarter Sessions Court that the plea resulted from a misunderstanding or misapprehension on the part of the defendant and his counsel such as to require the court to permit the change of plea[4] to enable a jury to pass upon the facts. The situation was not like that in United States v. Fox, 3 Cir., 130 F.2d 56, certiorari denied 1942, 317 U.S. 666, 63 S.Ct. 74, 87 L.Ed. 535, where the defendant had a full knowledge of the facts and acted under careful legal advice in choosing to plead guilty. Nor was it like that in United States v. Morin, 3 Cir., 1959, 265 F.2d 241, where the defendant did not attack the voluntariness of his guilty plea until six months after sentencing.

We hope that we are not presumptuous in saying that were we sitting as a Pennsylvania court, we would not hesitate to grant relief by way of setting aside the convictions and sentences on bills Nos. 1053 and 1091, even though the relator is properly detained by the respondent in accordance with the ten to twenty year sentence imposed on bill No. 1052. Commonwealth ex rel. Micholetti v. Ashe, 1948, 359 Pa. 542, 59 A.2d 891; Commonwealth ex rel. Brockway v. Keenan, 1955, 180 Pa.Super. 78, 118 A.2d 255; but see Commonwealth ex rel. Salerno v. Banmiller, 1959, 189 Pa.Super. 156, 149 A.2d 501.[5]

The federal rule, however, is that habeas corpus will not lie to attack a sentence which the petitioner has not yet begun to serve. McNally v. Hill, 1934, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238. See Parker v. Ellis, 1960, 362 U.S. 574, 80 S.Ct. 909, 4 L.Ed.2d 963, and Heflin v. United States, 1959, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407, which indicate that a majority of the Supreme Court still subscribes to the McNally rule.

Order

And Now, September 30, 1960, the relator's petition for a writ of habeas corpus is Denied as premature.

4. Furthermore, the fact that the assistant district attorney erroneously stated that the relator was implicated by another defendant's confession might, of itself, amount to a violation of due process. See Townsend v. Burke, 1948, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690.

5. But the writ itself would be denied, since the prisoner is not entitled to immediate release. Commonwealth ex rel. Brockway v. Keenan, 1955, 180 Pa.Super. 78, 118 A.2d 255; see Commonwealth ex rel. Salerno v. Banmiller, 1959, 189 Pa. Super. 156, 149 A.2d 501.