Commonwealth *v.* Wilkins, Appellant.

Argued November 13, 1970. Before JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*David Kairys,* Assistant Public Defender, with him *John W. Packel,* Assistant Public Defender, and *Vincent J. Ziccardi,* Defender, for appellant.

*James D. Crawford,* Deputy District Attorney, with him *Martin H. Belsky, Carl B. Feldbaum* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, May 17, 1971:

In August of 1967, appellant was indicted for assault and battery, assault with intent to rob, and robbery. The charges all arose out of a purse snatching, the victim of which identified appellant as her assailant. The Commonwealth's case against appellant was strengthened by the discovery, by the victim, of a card

with appellant's name on it among her credit cards when her handbag was returned to her. Sometime before October 27, 1967, appellant's counsel and the prosecuting attorney reached an agreement whereby appellant would plead guilty and the Commonwealth would recommend to the judge that appellant be sentenced to eleven and one-half to twenty-three months on the robbery bill and to a year's probation on the assault and battery bill.

On October 27, 1967, appellant's guilty plea was entered and accepted. Before accepting the plea of guilty, appellant responded to an on-the-record inquiry by the assistant district attorney and stated that no one—his own attorney, the Commonwealth's attorney, or the court—had promised him any specific sentence if he pleaded guilty and that he understood that if he pleaded guilty, he "could be sent away . . . for a long time."

The trial court first heard evidence as to the offense and evidence as to appellant's background, including his prior juvenile record, and his history of being a slow learner who had been to a number of different schools and correctional institutions. Although the prosecuting attorney later testified that he had mentioned his promised recommendation to the judge at a side-bar conference, no recommendation of a sentence was made on the record at that time. The trial court decided to defer sentence pending preparation of a presentence report.

Four months later, on February 29, 1968, a sentence hearing was finally held in appellant's case. Appellant had then been in jail seven months since his arrest. The other participants had been more active. The prosecuting attorney who had handled the case in its earlier stages, including negotiation of the plea bargain, was no longer assigned to it. The judge, who had probably handled hundreds of cases in the meantime, gave no in-

dication that he was aware of any Commonwealth recommendation as to sentence. The prosecuting attorney now assigned to the case mentioned on the record that there was a recommendation but for some reason, either his timidity or the manner in which the hearing proceeded, was never able to state what the recommendation was. After again interviewing appellant as to his background, the court sentenced him to eighteen months to fifteen years on the robbery bill. Appellant's counsel suggested a shorter minimum and the assistant district attorney suggested that both the minimum and the maximum be shortened, but at no time did the assistant district attorney make the specific recommendation which his predecessor had promised would be made.

In September of 1968, appellant filed a post-conviction petition alleging, *inter alia*, that his sentence of a fifteen-year maximum was erroneous, as the maximum for simple robbery was ten years, and that his guilty plea was involuntary.

A hearing was held on appellant's petition on May 22, 1969. The Commonwealth conceded that the appellant's sentence was improper and argument was limited to the validity of the plea. Appellant testified that on the morning of trial, the assistant district attorney and his lawyer told him that if he pleaded guilty, the assistant district attorney would recommend a sentence of eleven and one-half to twenty-three months.

The assistant district attorney admitted that the bargaining took place and that he agreed on behalf of the Commonwealth that he would recommend a sentence of eleven and one-half to twenty-three months on the robbery bill and a year's probation on the other bill. The assistant district attorney did not recall telling this directly to appellant, but he did recall making this promise to appellant's attorney.

The post-conviction hearing judge, after listening to the testimony, refused to allow appellant to withdraw his plea. As he explained, at the close of the hearing: "I find the plea to be voluntary in that it was knowingly and intelligently made with the hope and desire that it would resound [sic] to his benefit in sentencing. I find that there was no promise made."

Appellant appealed to the Superior Court, which affirmed the decision of the post-trial judge at 216 Pa. Superior Ct. 811, 263 A. 2d 478 (1970). We granted allocatur and now we reverse.

An application to withdraw a plea of guilty and enter a plea of not guilty (under the Act of April 15, 1907, P. L. 62, §1, as amended by the Act of June 15, 1939, P. L. 400, §1, 19 P.S. §241) is addressed to the discretion of the court before which the plea is entered, and its actions will not be reversed unless there has been a clear abuse of that discretionary power. *Commonwealth v. Kirkland*, 413 Pa. 48, 195 A. 2d 338 (1963).

It has already been established that it is a clear abuse of discretion for a court to refuse to allow a defendant to withdraw a plea of guilty, which was bargained for a promise by the district attorney's office to recommend a specific lenient sentence to the sentencing judge, when the district attorney's office later reneged on its part of the bargain. *Commonwealth v. Todd*, 186 Pa. Superior Ct. 272, 142 A. 2d 174 (1958). See also *Commonwealth v. Alvarado*, 442 Pa. 516, 276 A. 2d 526 (1971).

The Commonwealth attempts to distinguish *Todd* on the grounds that in the instant case the district attorney's office kept its promise. We cannot accept the Commonwealth's view of the facts. We have examined the record and we believe that the post-conviction hearing judge's opinion much more accurately describes

what took place. As he wrote: "While the record fails to disclose whether any specific recommendation was made, it does show that, at the time of sentencing at a subsequent hearing, the Court's attention was called to the fact that a recommendation had been made at the time of the entry of the guilty plea."

However, even though we agree with the post-conviction court's view of the facts, we cannot agree with its view of the law. The shy mention by the prosecuting attorney that a recommendation was being made was not what appellant bargained for when he agreed to plead guilty. He bargained for a specific recommendation by the district attorney's office that he be given an eleven and one-half to twenty-three month sentence. He knew that he could not count on the court being bound by the recommendation, but he had every right to count on the recommendation being made—on the record and audibly so the court could hear it.

Because that bargain was not kept in this case, appellant had a right to withdraw his plea. It was an abuse of discretion for the court to refuse to allow him to do so.

Because an examination of the record of this case indicates that courts and attorneys may not fully understand our attitude toward plea bargaining, we shall fully state our position, even though it is not necessary for the result we have reached today.

At the post-conviction hearing, appellant was interrogated concerning events which occurred involving appellant, his trial counsel and the prosecuting attorney shortly before trial. Interrogation by his own counsel elicited the following: "Q. Did they tell you anything about how you should respond to the question the judge would present before the court? Now, specifically, when the judge said, 'Are you doing this voluntarily or have any promises been made to you' did they tell

you how to answer those questions? A. Yes. Q. What did they tell you to say? A. They told me I was being asked, and when asked was there any deal or bargaining made I was to say, no."

Interrogation by the counsel for the district attorney's office elicited this additional testimony: "Q. Mr. Wilkins, you said that in this conference that you had by the elevator with your attorney and with the district attorney, that somebody told you certain questions that you were going to be asked under oath about whether any promises were made and you were supposed to say, no. Who told you that? A. The district attorney and my counsel. Q. They both told you that? A. Yes."

Later, when appellant's trial counsel was being questioned about the bargain, the representative from the public defender's office who was representing appellant at the post-conviction hearing asked trial counsel: "Q. . . . . I mean, all defense lawyers know the situation of a client being promised something. But having to say to the judge there is no promises made. Now, I think all defense attorneys come to that situation, and when they. . . ." The court interrupted, and the following took place: "THE COURT: You see it is semantics. I don't think they are proper. You are using the word 'promise' in two sentences in two different phases of the case. There were no promises made. MR. KAIRYS [The Public Defender]: Promise of a recommendation. . . . THE COURT: Well, then complete it by its proper phraseology. MR. KAIRYS: Yes, sir. I thought that I did. THE COURT: Well, you did but the record won't show it that way. BY MR. KAIRYS: Q. You were confronted by the situation that a promise was made. The promise of a recommendation with no assurance of a sentence. And yet when the judge asks the client were any promises made, if he doesn't say, no, the plea won't

be accepted; isn't that correct? A. I think that you are confusing the word, promise. Promise has in mind, when they ask that question about promise according to my experience is a promise by, that the sentence will be definitely so-and-so. Q. But he hasn't vindicated [sic] with his Honor what promises fully fit the category. I am saying a promise of recommendation; you know, when the judge says, 'Were any promises made? Anything told to you that you might get something in return?' A. I think again you are confusing that word. MR. KAIRYS: Well, if something is given in return, if something is promised whether it is to give something or a little less something the assurance would be better if the recommendation is something. Now, if you take the word promise and confuse that; didn't you know that you were going to be confronted with the situation and the judge asking the defendant, 'Were any promises made?' And the defendant having to respond. THE COURT: Well, just ask the question. The question the judge asked was 'Had he promised you'— Mr. Sweeney was the one that put it—'Has he promised you any particular sentence if you pleaded guilty?' So that the answer was honest when he said, 'No, sir.' There were no promises of any particular sentence."

This entire conversation indicates that there is a feeling among some of the participants in the bargaining process that, although bargaining must be permitted so that courts can dispose of their heavy caseloads, it is not a process to be discussed openly. This is a dangerous attitude which can only breed harmful cynicism and hypocrisy. Since plea bargaining will take place, and since it will be the process by which a great portion of all criminal cases will be concluded, it is important that it be subject to the same process of standardization and review as is the rest of our criminal justice system.

In the future, if a defendant or his counsel wish to protect a bargain they received for a plea, when the court asks the defendant if any promises were made to him, the defendant should answer in the affirmative, stating that the district attorney's office promised that they would make the specific recommendation which had, in fact, been promised. The court should then make it clear to the defendant that he is not bound by the district attorney's recommendation and at that time allow the defendant to plead guilty or go to trial.

The order of the Superior Court is reversed, the judgment of sentence is reversed, and the case is remanded for further proceedings consistent with the views expressed herein.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.

Mr. Justice COHEN took no part in the decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE JONES:

Insofar as the majority permits the appellant to *withdraw* his guilty plea, I must dissent. If the appellant recognized he was "guilty enough" to serve eleven and one-half to twenty-three months but not "sufficiently guilty" to serve eighteen months to fifteen years, I would *modify* the sentence to the agreed term rather than permit *withdrawal* of the plea. Indeed, this appeal, presumably, would not be before this Court had the bargain been kept. Moreover, appeals of this nature will be continually filed and guilty pleas continually invalidated unless this Court denounces, in the strongest possible terms, the unethical practice of "coaching" answers in connection with on-the-record plea entries.

For many years this Court has held that the trial judge is vested, "with discretion to allow or deny the

withdrawal of a guilty plea, subject to review on appeal and reversal only in the case of a clear abuse of discretion: [citations of authorities omitted]." *Com. v. Kirkland,* 413 Pa. 48, 54, 195 A. 2d 338, 341 (1963). *See, also, Com. v. Culbreath,* 439 Pa. 21, 264 A. 2d 643 (1970); *Com. v. Batley,* 436 Pa. 377, 260 A. 2d 793 (1970); *Com. v. Phelan,* 427 Pa. 265, 234 A. 2d 540 (1967), *cert. denied,* 391 U.S. 920 (1968); *Com. v. Scoleri,* 415 Pa. 218, 202 A. 2d 521 (1964). *See, also,* Pa. R. Crim. P. §320. Although appellant petitioned the PCHA judge rather than the trial judge for a withdrawal of the guilty plea, the issue remains the same: whether a judge abuses his discretion by not allowing a withdrawal *after* sentence is imposed, when he discovers a plea bargain for a lesser sentence than the one imposed was not kept.

While four members of this Court in *Com. v. Culbreath,* 439 Pa. 21, 264 A. 2d 643 (1970), drew no distinction between withdrawals before or after sentence, Justice ROBERTS, in a dissenting opinion joined by Justice POMEROY, noted that " 'if a plea of guilty could be retracted with ease after sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe.' Kadwell v. United States, 315 F. 2d 667, 670 (9th Cir. 1963)." 439 Pa. at 31, 264 A. 2d at 647. In the instant appeal, the appellant, dissatisfied with his "unexpectedly severe" punishment, now wants to take his chances with a full scale trial or another guilty plea even though he was "eleven and one-half to twenty-three months guilty." This type of thinking goes beyond the outmoded concept sometimes termed the "sporting rules of justice" as it would remove all skill or thought and substitute a casino-like game of chance.

Appellant's argument is not directed to the fact that he committed the acts as evidenced by his guilty

plea but only to his length of sentence. Accordingly, I cannot accept the assumption implicit in the majority's rationale that the bargained sentence so infected the guilty plea that the plea should be invalidated. With all deference to the majority of other jurisdictions and the position taken by the prestigious American Bar Association, *see, Com. v. Alvarado,* 442 Pa. 516, 519-20, 276 A. 2d 526, 528 (1971), I do not believe that withdrawal is in order when an accused's complaint is essentially directed to the punishment and not to the charges. Moreover, we unanimously refused to permit withdrawal in *Alvarado;* instead we modified the sentence in accordance with the plea bargain.

In my opening paragraph I noted the fact that this type of problem need not confront this Court if we can successfully stamp out an unethical, unnecessary aspect of plea bargaining: the "coached" answer. As noted by the majority, "[b]efore accepting the plea of guilty, appellant responded to an on-the-record inquiry by the assistant district attorney and stated that no one—his own attorney, the Commonwealth's attorney, or the court—had promised him any specific sentence if he pleaded guilty and that he understood that if he pleaded guilty, he 'could be sent away . . . for a long time.' " By a series of decisions culminating in *Com. ex rel. West v. Rundle,* 428 Pa. 102, 237 A. 2d 196 (1968), we have consistently stressed the importance of an on-the-record inquiry, preferably by the trial judge, on the voluntariness of the guilty plea. Moreover, the comments to Pa. R. Crim. P. §319 suggested questions including: "(6) Is the defendant aware of any plea bargain or other arrangement; (7) Is the defendant aware that the judge is not bound by any plea bargain or other arrangement between defense counsel and the attorney for the Commonwealth?" The record discloses that these questions were asked and

the appellant *negatively* responded despite the fact that an agreement had been negotiated and that *all* concerned, except the trial judge, were well aware of the bargain. Thus, it was the attorneys who grossly abused their discretion and not the trial judge or the PCHA judge. As demonstrated by the majority, the court should have been made aware of any bargains or promises. When a court of law is duped, those parties responsible for this travesty, either by commission or omission, should be strongly reprimanded. *See, Com. v. Alvarado,* 442 Pa. at 520 n.*, 276 A. 2d at 528 n.*.

We extensively analyzed plea bargaining in general in *Com. ex rel. Kerekes v. Maroney,* 423 Pa. 337, 223 A. 2d 699 (1966), and gave our imprimatur while realizing that, "the awesome effect of a guilty plea and the sensitive nature of the bargaining process makes certain safeguards essential." 423 Pa. at 349, 223 A. 2d at 705. Whenever a trial judge is informed by the accused of a desire to plead guilty, any proposed bargains should be brought to light before a guilty plea is entered. At that juncture, the judge may take evidence if he believes that concessions are unwarranted. If the judge then concludes he will not follow the agreement he should then so inform the accused before receiving any guilty plea. There is nothing sinister about plea bargaining, especially when the ends of justice are best served. By keeping the bargain a secret, the accused, his counsel and the assistant district attorney have frustrated the ends of justice.