# WILLIAM LLOYD STURGIS, JR. *v.* STATE OF MARYLAND

[No. 795, September Term, 1974.]

*Decided April 8, 1975.*

The cause was argued before ORTH, C. J., and GILBERT and LOWE, JJ.

*Gerald A. Kroop* for appellant.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Richard J. Kinlein, State's Attorney for Howard County* and *Richard J. Wilkinson, Assistant State's Attorney* for Howard County, on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

William Lloyd Sturgis, Jr., appellant, was apprehended and charged with robbery with a deadly weapon. Sturgis was indicted by the grand jury for Howard County for the armed robbery and other related offenses. Apparently, as the result of the negotiations between an Assistant State's Attorney and defense counsel, it was agreed that Sturgis would enter a plea of not guilty to the armed robbery charge, elect a court trial and submit on an agreed statement of facts. In exchange for Sturgis's actions the State agreed to nol pros all of the other counts of the indictment and to refrain from making any recommendations to the trial judge with respect to sentencing. The case proceeded according to plan until the time of disposition. The State's Attorney himself appeared and informed the court that he was going to deviate from the plea negotiations. He said in pertinent part:

> "Mr. Kinlein [State's Attorney]: . . . I'm going to deviate from the negotiations on the plea. *I'm going to deviate because I think it's important that I stand up here on behalf of the public I represent. And notwithstanding any agreement to the contrary that I'm not a party to and not on notice of, I'm going to point out to the Court that armed robbery is the second most serious crime that's outlined in Article 27, that the appropriate penalty is set forth by the General Assembly as being twenty years imprisonment,* compared to, for instance, thirty years for second degree

murder, and life imprisonment for first degree murder or rape. It has been projected to the Court that the defendant is scared. I would suspect that Mr. Willmer was extremely scared when confronted with a .38 automatic pistol.

Mr. Cocoros [Defense counsel]: . . . I must object at this time. I think as part of the plea negotiations, Your Honor, the State had agreed to remain mute at disposition, Your Honor. Now, I know the State's Attorney is now going to deviate, but I don't know how he's deviating. I don't know if he's going against the agreement and recommending incarceration, or whether he's going, will support my plea for probation on behalf of Mr. Sturgis.

Mr. Kinlein: . . . I'd offer him an opportunity to withdraw his plea. I'm not going, I'm not going to stand here and have recommended on the record that this man be placed on probation without an opportunity to dispute that.

The Court: Well, I think the question — would you pass me the docket entries again, please. Could I see the recommendation, gentlemen? Mr. Cocoros, I believe you have it on your desk.

The Court: All right, gentlemen, I just wanted to check the docket entries. Is there anything else you wish to say about this matter?

Mr. Kinlein: Yes, Your Honor. What I was about to say was that I believe that the question has been posed to the Court as to what incarceration would accomplish. *I think that the principal thing that incarceration would accomplish is to begin to reinforce the integrity of the criminal justice system.* The

second thing that it would accomplish is the protection of the public, and I believe the public are entitled to have persons who commit armed robbery, after a long line of other minor crimes, to have them incarcerated. I believe that by reviewing Mr. Sturgis' previous record, it's obvious that he's been dealt with lightly by the Court in the past, and would suggest that that could be the prinipal reason why he's here today. I fail to see that association with controlled dangerous substances is a defense, but would rather suggest to the Court that it is an aggravating circumstance, and not one to be taken in mitigation. Your Honor, this is armed robbery, a .38 automatic directed towards the person of another human being, with the idea of relieving him of thirty-six dollars. *Your Honor, this is the principal area of crime in the United States today, and it is the area that most people are concerned with, and until the courts and the State takes heavy action in cases like this, it's going to continue to live in fear.* That's all that I have.

Mr. Cocoros: Of course, . . . I'd object to the comments of the State's Attorney, . . . and ask for a mistrial.

The Court: It's not a question of trial now, gentlemen, it's a question of sentencing, which as I think counsel will agree, is largely a matter for the Court, essentially, to decide. . . . " (Emphasis supplied).

Defense counsel did not agree, however, and hence this appeal.

While the record in the instant case does not set forth the precise agreement reached between the State and the appellant, it does support a clear inference that an

agreement was, in fact, achieved. The State's Attorney's avowed deviation from "any agreement to the contrary", coupled with the appellant's objection to the State's breaching of its plea bargain, underpins such an inference.[1] This is particularly so when one considers that there was no denial by the State's Attorney of defense counsel's expression to the trial judge that there had been a plea bargain. It is patent from a reading of the above-quoted portions of the transcript that the agreement would pertain to the State's making no recommendation relative to the trial judge's imposition of sentence.

We observe from the record that appellant was sentenced on March 29, 1974, and was ordered to be confined under the jurisdiction of the Division of Correction for a term of 14 years. That sentence was subsequently reduced on April 29, 1974, upon petition, to a term of seven years. Following the reduction of sentence the appellant filed a request on May 6, 1974 for a "Belated Appeal." In his request the appellant alleged through counsel that although he desired to enter an appeal on April 29, 1974, the last day for doing so under Maryland Rule 1012, he was unable to perfect his appeal because he could not contact anyone in the Public Defender's Office, nor could he locate the trial judge. On October 10, 1974, as the result of a post conviction proceeding, the appellant was granted the right to a belated appeal, and appellant then appealed to this Court.

The Supreme Court in *Santobello v. New York, supra* n. 1, the Court of Appeals of Maryland in *Miller v. State,* 272 Md. 249, 322 A. 2d 527 (1974), and this Court in *Wynn v. State,* 22 Md. App. 165, 322 A. 2d 564 (1974), all considered cases wherein there had been a negotiated plea of guilty and a subsequent breach of the agreement by the State. In each

---

1. It has been widely held that "One prosecutor is bound by the promises made by another prosecutor." Note, *The Legitimation of Plea Bargaining: Remedies for Broken Promises,* 11 Am. Crim. L. Rev. 771, 784 (1973) (citing Santobello v. New York, 404 U. S. 257, 92 S. Ct. 495, 30 L.Ed.2d 427 (1971); United States v. Carter, 454 F. 2d 426 (4th Cir. 1972); People v. Mitchell, 46 Ill. 2d 133, 262 N.E.2d 915 (1970).) Santobello states: "[T]he staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right is doing' or has done." 404 U. S. at 262.

case the Court reversed. In *Santobello* the accused, in consideration of the prosecutor's agreement "to make no recommendation as to sentence," withdrew his plea of not guilty and entered a guilty plea to a lesser charge. At the time of sentencing "another prosecutor replaced the prosecutor who had negotiated the plea." The new prosecutor recommended the maximum sentence. The defense counsel objected and argued that the government had entered into a plea bargain. The argument was cut short by the sentencing judge who answered that he was "not at all influenced by what the district attorney said." Chief Justice Burger, writing for the majority [2] declared:

> "This phase of the process of criminal justice, [plea bargaining] and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that *when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.*" (Emphasis supplied).

After stating that the Court had "no reason to doubt" the sentencing judge's declaration that he was not influenced by the prosecutor's recommendation, the Chief Justice went on to say:

> "Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration."

---

**2.** Justices Douglas, White and Blackmun joined the Chief Justice. Justice Douglas also filed a separate concurring opinion. Justice Marshall concurred in part and dissented in part and was joined therein by Justices Brennan and Stewart.

The Court of Appeals in *Miller v. State, supra,* dealt with a negotiated plea of guilty wherein the State agreed to make no recommendation to the sentencing judge. The Court of Appeals believed that such recommendation was, nevertheless, made and, speaking through Judge Eldridge, said:

"Most state and federal court decisions, both before and after *Santobello,* have held that where the defendant pleads guilty as part of a 'plea bargain,' and the prosecution breaches the agreement, the defendant should be allowed to withdraw his guilty plea. *See, e.g., White v. Gaffney,* 435 F. 2d 1241 (10th Cir. 1971); *United States v. Graham,* 325 F. 2d 922 (6th Cir. 1963); *Zaffarano v. United States,* 306 F. 2d 707 (9th Cir. 1962); *People v. Barajas,* [26 Cal. App. 3d 932, 103 Cal. Rptr. 405 (1972)]; *Crossin v. State,* 262 So. 2d 250 (Fla. 1972); *People v. Caskey,* 4 Ill. App. 3d 920, 282 N.E.2d 250 (1972); *Wood v. Commonwealth,* [469 S.W.2d 765 (Ky. 1971)]; *People v. Bannan,* 364 Mich. 471, 110 N.W.2d 673 (1961); *State v. Wolske,* 280 Minn. 465, 160 N.W.2d 146 (1968); *State v. Hovis,* 353 Mo. 602, 183 S.W.2d 147 (1944); *People v. Farina,* 2 App. Div. 2d 776, 154 N.Y.S.2d 501 (1956); *aff'd* 2 N.Y.2d 454, 141 N.E.2d 589, 161 N.Y.S.2d 88 (1957); *Commonwealth v. Wilkins,* 442 Pa. 524, 277 A. 2d 341 (1971); *Darnell v. Timpani,* 68 Wash. 2d 666, 414 P. 2d 782 (1966); *State ex rel. Clancy v. Coiner,* [154 W. Va. 857, 179 S.E.2d 726 (1971)]. *See also* ABA Project on Minimum Standards for Criminal Justice, Pleas of Guilty, § 2.1 (a) (ii) (4) (Approved Draft 1968); Note, *Guilty Plea Bargaining: Compromises By Prosecutors to Secure Guilty Pleas,* 112 U. Pa. L. Rev. 865, 877 (1964); Note, *The Legitimation of Plea Bargaining: Remedies for Broken Promises,* 11 Am. Crim. L. Rev. 771, 792 (1973). The reason the defendant is usually permitted to withdraw his guilty plea, if

that is his choice, was expressed by Mr. Justice Marshall in *Santobello* as follows (*id.* at 268):

"When a prosecutor breaks the bargain, he undercuts the basis for the waiver of constitutional rights implicit in the plea. This, it seems to me, provides the defendant ample justification for rescinding the plea. Where a promise is 'unfulfilled,' Brady v. United States, 397 U. S. 742, 755 (1970), specifically denies that the plea 'must stand.'"

In our view, the better practice, and the one supported by the majority of cases, is to permit the defendant to withdraw the plea. Accordingly, where a guilty plea has been induced by the prosecutor's agreement to make no recommendation as to sentencing, and the prosecutor violates that agreement, the defendant may at his option have the guilty plea vacated. On the other hand, if the defendant so desires, he may elect to leave the plea standing and be resentenced. As the Supreme Court stated in *Santobello v. New York, supra,* 404 U. S. at 263, the resentencing should be by a different judge.

It should be emphasized, however, that if a defendant under these circumstances desires to rescind the plea bargaining agreement and withdraw his guilty plea, he will have to plead anew to *all* of the original charges, including those which the State had nol prossed. *Santobello v. New York, supra,* 404 U. S. at 263, n. 2."

Seven days before the decision in *Miller,* this Court, speaking through Judge Lowe, of a negotiated guilty plea wherein there was an alleged breach on the part of the State, poignantly observed in *Wynn v. State, supra* at 172 that:

"We cannot overlook the fact that a prosecutor has a profound obligation to society. If prior to the consummation of a plea bargain he foresees that it

might endanger society, he has not merely the right, but the responsibility, to withdraw from the agreement."

Judge Lowe further stated at 173:

"All foreseeable consequences of a plea bargain should be considered by counsel on behalf of society as earnestly as they are by counsel on behalf of a defendant. An attorney or for that matter anyone else, has very little to recommend him if faith is lost in his assurances that he will live by his word. Finally, at the time of performance, compliance with the agreement must be to the letter and in good faith. The State may not sell the cow and hope to continue to sup upon her milk."

In the instant case we treat of a different creature than the guilty pleas present in *Santobello, Miller* and *Wynn, supra.* Here we deal with a negotiated plea of not guilty and trial upon a factual stipulation.[3] While it could be argued that the *Santobello, Miller, Wynn* trilogy has no control over the present situation because of the absence of a guilty plea, we think such argument would be superficial. If the State is precluded from reneging upon its solemn word in the case of a negotiated guilty plea, we fail to see why the State's promise is any less sacrosanct when, as here, it agrees to abstain from recommending sentence in exchange for a negotiated plea of not guilty, and a submission upon a statement of fact. We think the State's word, be it given on a negotiated plea of guilty or under the circumstances present in this case, to be equally binding.

When the State's Attorney appeared in court at the time of sentencing and unilaterally abrogated the Assistant

---

3. A simple plea of guilty is not the only form of a negotiated plea a defendant may make. *See, e.g.,* Commonwealth v. Marsh, 448 Pa. 292, 293 A. 2d 57 (1972) (promise to forego further appeals); People v. White, 116 Ill. App. 2d 180, 253 N.E.2d 654 (1969) (waiver of jury trial); People v. Wadkins, 63 Cal. 2d 110, 403 P. 2d 429, 45 Cal. Rptr. 173 (1965) (en banc) (active participation in solving bank robbery); Commonwealth v. Todd, 186 Pa. Super. 272, 142 A. 2d 174 (1958) (promise to testify as State's witness). *See generally* Note, *The Legitimation of Plea Bargaining, supra* n. 1.

State's Attorney's agreement with the appellant, he not only violated the spirit of *Santobello, Miller* and *Wynn,*[4] and rendered valueless the State's word, but he effectively eroded the accused's trust in the integrity of the State. Because of the State's Attorney's disregard of the State's vow to the appellant, we shall vacate the judgment of the Circuit Court and remand the matter for further proceedings not inconsistent with this opinion.

As a result of our remand the accused may, under *Miller v. State, supra,* follow the same procedure as suggested in that case and have sentence imposed by a different judge, or he may proceed to trial on the indictment. Of course, if he chooses the latter, the State may elect to try him on the nol prossed counts after obtaining new indictments.[5]

The happenings in this case demonstrate that the better practice is that the record affirmatively demonstrate the existence of a plea bargain, and its terms. *See People v. West,* 3 Cal. 2d 595, 477 P. 2d 409, 91 Cal. Rptr. 385 (1970) (en banc) for possible methods of incorporating the bargain into the record.[6]

> *Judgment vacated.*
> *Case remanded for further proceedings not inconsistent with this opinion.*
> *Costs to be paid by Howard County.*

---

4. The latter two cases were not decided as of the date of the trial in the instant case.

5. The Court in Miller, *supra,* patently followed the suggested procedure on remand as advanced by Mr. Justice Douglas, concurring, in Santobello, *supra* at 267.

6. The four methods are: "(1) the bargain could be stated orally and recorded by the court reporter, whose notes then must be preserved or transcribed; (2) the bargain could be set forth by the clerk in the minutes of the court; (3) the parties could file a written stipulation stating the terms of the bargain; (4) finally, counsel or the court itself may find it useful to prepare and utilize forms for the recordation of plea bargains."