PATRICK McDONALD *vs.* THE STATE OF MARYLAND.

*Error in the Sentence of a Prisoner—Power of the Court of Appeals.*

Where a sentence not authorized by law has been imposed upon a prisoner, the Court of Appeals can only reverse the judgment; it has no power to impose the proper sentence, or to remand the case to the Court of original jurisdiction for that purpose.

APPEAL from the Criminal Court for Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BOWIE, STEWART, MILLER, and ALVEY, J., on the part of the appellant, and submitted on brief on the part of the State.

*John P. Poe,* for the appellant.

*Attorney General Gwinn,* for the appellee.

MILLER, J., delivered the opinion of the Court.

The plaintiff in error was indicted for murder, and on his trial was found guilty of manslaughter and not guilty of murder. Upon this verdict the Criminal Court of Baltimore City, in which he was tried, pronounced judgment, sentencing him to "*five years* imprisonment in the jail of Baltimore City," and this judgment is brought before us for review, by writ of error.

The punishment prescribed by law (Act of 1864, ch. 39,) for the crime of manslaughter, is confinement in the pen-

itentiary for not more than ten years, or, in the discretion of the Court, a fine of not more than five hundred dollars, or imprisonment in jail for *not more than two years,* or both fine and imprisonment in jail. The Attorney General admits that through inadvertence a sentence was imposed on the prisoner, which the law does not authorize, and concedes upon the authority of *Watkins vs. The State,* 14 *Md.,* 412, this judgment must be reversed. That is undoubtedly so, and the only other question we can now decide is, whether upon such reversal this Court has the power to impose the proper sentence, or to remand the case to the Court of original jurisdiction for that purpose. In the absence of legislation conferring that authority upon this Court, it is clear it has no power to do either of these things. In *Watkins vs. The State,* where the judgment was reversed for a similar defect, the Court say "the effect of the reversal for error in the judgment itself, is properly stated by the counsel for the plaintiff in error in his argument. It defeats all former proceedings in the cause. This will abundantly appear by reference to the following authorities cited by him on this point. 1 *Chitty's Cr. Law,* 755; 4 *Bl. Com.,* 393 ; *Hawkin's, Book* 2*nd, ch.* 50, *sec.* 19." In addition to these authorities we refer to several more recent decisions of the English and Irish Courts upon the subject, viz., *Rex vs. Ellis,* 5 *Barn. & Cress.,* 395 ; *King vs. Bourne,* 7 *Adol. & Ellis,* 58 ; *Silversides vs. The Queen,* 2 *Gale & Davison,* 617, and *Holland vs. The Queen,* 2 *Jebb & Syme,* 357. In each of these, and especially in the first two, it was, upon full review of all previous decisions, denied that a Court of error had any power in a case like this, either to remand the record to the Court below for the proper judgment, or itself to pronounce such judgment as the law authorized, and *Rex vs. Kenworthy,* 1 *Barn. & Cress.,* 711, which was cited in support of the power to remand, is there shown to be a case in which *no judgment* had in fact been given, and it

was therefore remitted back to the Sessions in order that a judgment might be rendered. In this country also, the decisions wherever the question has arisen, are almost uniform and to the same effect. It was so decided in several cases by the Supreme Court of Massachusetts, and we need refer only to *Christian vs. The Commonwealth,* 5 *Met.*, 530. After these decisions the Legislature of that State provided by statute, that "whenever a final judgment in any criminal case shall be reversed by the Supreme Judicial Court, upon a writ of error, oh account of error in the sentence, the Court may render such judgment therein as should have been rendered, or may remand the case for that purpose to the Court before whom the conviction was had," and the Supreme Court of that State has since acted under that statute. *Jacquins vs. The Commonwealth,* 9 *Cush.,* 279. In *New York* there is a series of cases in the inferior Courts to the like effect, and in *Ratzky vs. The People,* 29 *New York,* 124, the Court of Appeals of that State, held it to be well settled law, that but for the authority conferred upon that Court by the statute of 1863, it would have no power upon reversal of the judgment of the Supreme Court in that case for error in the judgment itself, either to pronounce the appropriate judgment, or remit the record to the Oyer and Terminer, to give such judgment. The statute referred to declared in effect, that the Appellate Court shall have power upon any writ of error, when it shall appear that the conviction has been legal and regular, to remit the record to the Court in which such conviction was had, to pass such sentence thereon as the Appellate Court shall direct. There are also numerous cases in other States where the same question has been incidentally decided in the same way. In *Ex parte Lange,* 18 *Wallace,* 163, the Judges of the Supreme Court of the United States, though differing upon other points, agree in the proposition, that apart from authority conferred by the Legislature, Appellate Tribunals have only the power of

reversal, where in criminal cases the judgments are entire and not such as the law authorizes to be imposed, and all the cases on the subject are collected and referred to in the dissenting opinion of Mr. Justice CLIFFORD, in that case.

We have been able to find but two cases which are in even seeming conflict with the great weight and current of judicial precedent and authority on this question.

One of these is the case of *Kelly, et al. vs. The State*, 3 *Sm. & Mar.*, 518, decided by the High Court of Errors and Appeals of Mississippi, in 1844. There the judgment was reversed for two reasons, 1st, because it did not appear in the record that the prisoners were personally in Court at the time of pronouncing the sentence, and 2nd, because the sentence did not set forth the time from which the imprisonment was to date. For these two errors say the Court, "the judgment of the Court below is reversed without disturbing the verdict, and the cause remanded with directions to the Court below to pronounce its judgment in accordance herewith, having first duly inquired of the defendants whether they have anything further to urge why its judgment should not then be pronounced." No question was made in argument and no authority is referred to by the Court, in support of the power to remand thus exercised, and this has led us to examine the statutes of that State as to the powers conferred on its Appellate Court at that time. As expected, we find (*Hutchinson's Code*, 927,) that that Court was clothed with very full authority in such cases. They had power upon the reversal of any judgment or *sentence*, to render such judgment *or pass such sentence* as the Court below should have rendered or passed, and the power to remand in *criminal* as well as in civil cases, where there is anything *uncertain* in the judgment or sentence is also given in very broad and general terms. We think therefore, the Court in this case rested their action not upon the supposed possession of any inherent or common law powers to that end, but upon

statutory authority well understood and recognized in that State.

The other case is that of *Beale vs. The Commonwealth,* 1 *Casey,* 11, decided by the Supreme Court of Pennsylvania, in which the opinion was delivered by C. J. LEWIS from which WOODWARD, J., dissented. To understand what weight as authority, justly attaches to this case we must first look to the antecedent decisions and legislation on this subject in that State. It appears that in the course of the argument in *Drew vs. The Commonwealth,* 1 *Whart.,* 279, which took place in 1835, ROGERS, J., referred to a recent case in which he said the Supreme Court had decided that where the indictment was good, and the trial good, that Court would do what the Court below would do after a new conviction, viz., sentence the party *de novo* and aright. In the following year, 1836, the Legislature gave express power to the Court, " to examine and correct any and all manner of errors of the justices, magistrates and Courts of the commonwealth, in the process, proceedings, *judgments* and decrees, as well in *criminal* as in civil pleas or proceedings, and thereupon to reverse, *modify*, or affirm such judgments and decrees or proceedings as the law shall direct." After this came the case of *Daniels vs. The Commonwealth,* 7 *Barr.,* 371, in which the opinion was delivered by ROGERS, J. In that case this statute is set out and the Court say that by it " in addition to the power to reverse or affirm heretofore given, we have authority to *modify* the judgment; that is to change its form, vary or qualify it, and this as well in criminal as in civil cases. It would certainly be better if the Court had power also *to remit* the record but *as this is not given* by the Act of 1836, *we must examine* the sentence and do right and justice according to circumstances," and accordingly acting under the statute the Court struck out the words " hard labor " from the sentence and affirmed it in other respects. It appears to us the Court in that case clearly decided they

had no power to remand the record, and that their only power to modify the sentence was derived from the statute. Then comes the case referred to of *Beale vs. The Commonwealth,* in which C. J. LEWIS says: "The doubts which formerly existed respecting the power of the Supreme Court upon reversing a judgment in a criminal case are entirely dissipated. We have authorities to show that the Supreme Court on reversal of a judgment in a criminal case for error in the sentence, has power to pass such sentence as the Court below ought to have passed." For this position *Drew vs. The Commonwealth,* and *Daniels vs. The Commonwealth,* are first cited. What these cases, and especially the latter, decide, respecting this power and whence it was derived has been stated. Two other cases, *Commonwealth vs. Ellis,* 11 *Mass.,* 465, and *Kane vs. The People,* 8 *Wend.,* 211, are also added in the same citation. These we have examined but are unable to perceive that they have any bearing upon the proposition stated. We have fully shown what the Massachusetts and New York decisions on the question under consideration actually are, and as respects them there can, we think, be no doubt. He then says, "it has also the power to award a *procedendo* in a criminal case." For this *Rex vs. Kenworthy,* 1 *B. & C.,* 711, is cited, and that case the subsequent English decisions have declared was one in which no judgment was rendered in the Court of original jurisdiction. That case is therefore no authority for the position that a *procedendo* can be ordered after a reversal of a judgment in a criminal case for error in the sentence itself. He then adds "and it may in its discretion, remit the record with orders to proceed on the indictment after the reversal of an erroneous judgment." For this *Commonwealth vs. M'Kisson,* 8 *Ser. & R.,* 422, and *Commonwealth vs. Church,* 1 *Barr.,* 110, are cited. These were cases brought up by the State from judgments quashing the indictments, and the Court reversed the quashing orders, sustained the

indictments, and remanded the cases to the end that the parties might be tried under them. There the parties had never been tried and no judgments had ever been pronounced against them. If nothing more was meant to be asserted by the proposition than was decided in these cases we have no occasion to quarrel with it. A large number of cases in this and other States might be cited to the same effect. But he then says "The Act of 16th of June, 1836, conferred no new powers in this respect. It was designed to remove doubts which had arisen in consequence of conflicting decisions." If however the Court in *Daniels vs. The Commonwealth* did not decide that this Act conferred a new power upon the Court as to their control over judgments in criminal cases, they were certainly unfortunate in the language they there use, or we are unfortunate in being unable to comprehend it. Nor have we been able to find in the published reports any anterior conflicting decisions from which doubts as to the power of the Court in such cases could have arisen. We may have overlooked them or the reference may be to some unreported and unpublished decisions of that character. But certain it is that neither in the title, preamble, nor other parts of this Act, is there any reference to such doubts or conflicting decisions. Such reference or recital is frequently if not usually made in statutes passed for such purposes. The learned Chief Justice, for whose abilities and well earned reputation we have great respect, then proceeds thus: "The common law embodies in itself sufficient reason and common sense to reject the monstrous doctrine, that a prisoner whose guilt is established by a regular verdict, is to escape punishment altogether because the Court committed an error in passing the sentence. If this Court sanctioned such a rule it would fail to perform the chief duty for which it was established. Our duty is to correct errors, and to minister justice. But such a course would perpetuate error and produce the most intolerable injustice." But to these

McDonald *vs.* The State.

propositions we cannot yield assent.  No such doctrines have ever been announced by the tribunals, that for centuries have made, interpreted, and administered the common law.  On the contrary, the Courts of England in administering justice in criminal cases have, save in rare and exceptional instances, been watchful of the liberties of the subjects, and have taken care they should not be oppressed by the Crown.  Their doctrine has been that men must be punished according to the law of the land and that to punish them otherwise is tyranny.  It would, we think, be a startling novelty to the great Judges of the English Courts to be told it is monstrous and intolerable that a party should escape punishment, who has been duly convicted of crime, but upon whom a sentence has been imposed which the law does not authorize.  From the many cases wherein they have made decisions that have led to that result, we infer they have regarded such escapes as less fraught with evil consequences, than for Courts to attempt to *usurp authority*, in order to inflict punishments. The decision which we have thus examined at length is, in our judgment, exceptional, and in conflict with the whole current of authorities, both in England and in this country.  We cannot adopt or follow it, and shall not exercise any such powers, unless they are conferred upon this Court by the Legislature.

Is there then any law which has given this Court the power to pass a proper sentence in this case, or to remand it to the Criminal Court for that purpose?  We know of none.  The 14th and 16th sections of Art. 5 of the Code, have no application to such cases.  They give the Court no power to modify criminal sentences or to direct them to be modified by the inferior Courts.  The same provisions were in force when *Watkins vs. The State* was decided, and in that case this question was fully argued.  The reversal of that judgment without a *procedendo* is conclusive of it.

McDonald *vs.* The State.

Whether the plaintiff in error by thus requesting and obtaining his discharge from this indictment, has waived the protection which the law provides against a second jeopardy, so that he can be re-indicted and re-tried on the same charge, as has been suggested by some jurists and text writers, is a question we are not now at liberty to decide. It has not been argued on either side by counsel, and we should be stepping far beyond the line of duty, if not committing a grave impropriety, in now expressing any opinion upon it. We can only say with C. J. SHAW, in *Christian vs. The Commonwealth* that "whatever other remedy the State may have, it is not competent for this Court to pass a new sentence upon this prisoner, nor to remit the case to the Criminal Court." Our power is limited to a simple reversal of the judgment.

*Judgment reversed.*

(Decided 16th June, 1876.)

NOTE.—After the above decision was rendered, the prisoner Patrick McDonald was arrested, while in the jail, upon a bench-warrant issued out of the Criminal Court of Baltimore City, charging him with the murder of Daniel Brown. Whereupon he petitioned the Hon. JAS. L. BARTOL, C. J., for a writ of *Habeas Corpus*, which was granted; and upon the hearing, it was admitted on the part of the State, that the felony and murder charged in the warrant was the same as that for which the petitioner had before been indicted and tried; the Chief Judge after full argument discharged the petitioner, deciding:

1st. That the facts being admitted, it was competent for the Judge under the Code, *Art.* 43, to decide the question whether there was sufficient legal cause for the detention of the petitioner.

2nd. That the petitioner having been arraigned and regularly tried upon a sufficient indictment, and a legal verdict having been rendered, had been in jeopardy, and that he could not lawfully be placed in jeopardy a second time for the same offence.

3rd. That the former trial was, in no sense, a mis-trial. If it had been, the Court of Appeals would have remanded the case, so that the party might be tried again.

4th. That the petitioner, by suing out his writ of error, and obtaining a reversal of the judgment, had not waived the protection which the law pro-

vides, against a second jeopardy, and was not liable to be again indicted and tried for the same offence.

In the opinion rendered by the Chief Judge, he remarked : "If the prisoner, after having been duly convicted of manslaughter, escapes punishment, by reason of an error in the sentence, this results from the want of legislative provision in such cases, to enable the Court of last resort to correct the sentence, or to remand the case to the Criminal Court for that purpose. Such legislation was had in England in 1848, (11th and 12th Victoria, ch. 78,) and has been enacted in several of the States."