[Crim. No. 5056. Fourth Dist., Div. One. July 27, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANCISCO SERRANO BARAJAS, Defendant and Appellant.

COUNSEL

Sheela, Lightner, Hughes & Castro and Howard J. Bechefsky for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Derald E. Granberg and Alan S. Meth, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**AULT, J.**—Defendant Francisco Serrano Barajas appeals from a judgment of conviction sentencing him to prison. He was originally charged with one count of possessing narcotics (Health & Saf. Code, § 11500) and one count of possessing restricted dangerous drugs (Health & Saf. Code, § 11910). After denial of his motion to suppress evidence obtained under a search warrant, he entered a plea of guilty to possessing narcotics pursuant to a plea bargain in which the prosecution agreed to (1) dismiss the dangerous drug charge, and (2) remain silent at the time of sentencing. The first part of the bargain was kept, and the dangerous drug charge was dismisssed; the prosecution violated its promise to remain silent at the time of sentencing.

### ISSUES

On appeal Barajas contends: 1. The affidavit upon which the search warrant was issued was inadequate in that it did not allege the informants

knew the appearance of heroin. 2. The sentencing hearing was unfair in that the district attorney violated his agreement to remain silent and the court relied upon allegations of unnamed informants.

### VIOLATION OF THE PLEA BARGAIN

On July 23, 1971, Barajas entered a plea of guilty to possession of narcotics. He, his attorney, and the deputy district attorney signed a change of plea form which provided in Paragraph 9: "That he [Barajas] *has not* been induced to plead guilty by any promise or representation of a lesser sentence, probation, reward, immunity, or anything else, except *District Attorney will dismiss the remaining count & to remain silent at the time of sentence.*" (The italicized words were inserted in the printed form in handwriting.)

Three probation and sentencing hearings were held after Barajas entered his guilty plea. On August 13, 1971, a brief hearing was held in which the court considered the original probation report. The report reviewed the defendant's past criminal record, indicated he was addicted to heroin and participating in a local Methadone treatment program, and recommended criminal proceedings be adjourned to determine whether he was a narcotic addict. Defendant's attorney made no objection to the recommendation, the deputy district attorney made no statements contrary to his agreement, the court suspended the criminal proceedings, and civil narcotic commitment proceedings were filed pursuant to Welfare and Institutions Code section 3051. Doctors were appointed to examine Barajas and a further hearing was scheduled for August 24, 1971.

On August 24, the court began the hearing with the remark: "I notice that this man is found to be a drug dependent on heroin, but they don't recommend the transfer to CRC [California Rehabilitation Center] because he is not motivated for treatment." Moments later the following transpired:

"THE COURT: Oh, one case with two files I guess. We never run short of paper.

"All right, I suppose we ought to make a grant of probation under—for three years, Mr. District Attorney, under all the usual terms and conditions, plus the narcotic cases, plus the special condition that he continue on this Methadone program until released.

"MR. [Nicholas] KASIMATIS [The same deputy district attorney who signed the plea bargain.]: Well, your Honor, there is some indication here

that Mr. Barajas was dealing in heroin. There was a charge of his possessing a firearm which was also found at the time of his arrest.

"THE COURT: Where was the firearm found? Was he charged with that?

"MR. KASIMATIS: Yes, he was. However—

"THE COURT: It was dropped, wasn't it? Dismissed.

"MR. KASIMATIS: Well, yes. They found in the house, of course, a Browning .9 millimeter automatic, the Colt, ammunition and so forth. He is an alien, and I think there was insufficient evidence of that fact to present it at the preliminary hearing, which in and of itself is a felony for an alien to possession [sic] firearms—concealable firearms.

"THE COURT: You want to recharge him or what?

"MR. KASIMATIS: Well, I think—I was wondering, your Honor, if you might consider referring this matter for further report from the Probation Office regarding progress on the Methadone. In a large number of instances, at the time of probation we have certain statements that they are on it, and so forth, and then we find—

"THE COURT: All right. On motion of the People, Mr. Sheela [defendant's attorney], I will continue it."

A supplemental probation report was prepared for the continued hearing which was held on September 27, 1971. The report stated Barajas did not wish to go to CRC, but desired to continue with Methadone treatment under probation. It also contained damaging hearsay statements by an agent from the Bureau of Narcotics, based on information from unnamed informants, indicating Barajas had been, and still was, involved in selling heroin. While deeming it "most unfortunate that the defendant is not motivated toward treatment at the CRC facility," the probation officer recommended denial of probation and sentence to prison.

At the hearing, defendant's attorney strenuously objected to the hearsay statements in the probation report and requested the court to continue the hearing to "get some testimony under oath on these allegations." This time the deputy district attorney remained silent. The court sentenced Barajas to prison.

We reject the Attorney General's argument the deputy district attorney did not violate his agreement to remain silent at the time of sentencing. His volunteered remarks at the August 24 probation hearing, indicating Barajas was dealing in heroin and had firearms in his home at the time of his arrest, were calculated to, and in fact did, dissuade the court from

carrying out its announced intention to place Barajas on probation. Far from being merely neutral and clarifying, the remarks were damaging and prejudicial to the defendant. While such statements by the district attorney might be proper at sentencing under ordinary circumstances, they cannot be squared with his earlier promise not to make them.

In *Santobello* v. *New York,* 404 U.S. 257 [30 L.Ed.2d 427, 92 S.Ct. 495], Chief Justice Burger, writing for the court, commented on this aspect of plea bargaining: "This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." (*Santobello* v. *New York,* 404 U.S. 257, 262 [30 L.Ed.2d 427, 433, 92 S.Ct. 495, 499].)

The conduct of the deputy district attorney was not inadvertent. The deputy who made the agreement violated it. Nonetheless, we find no basis to reverse on the ground urged. The defendant is not entitled to the benefit of the trial court's originally announced intention to place him on probation merely because the prosecutor violated his promise. ■ Where the prosecution repudiates its part of the plea bargain, the defendant's remedy is to move to withdraw his plea of guilty in the trial court. (*People* v. *Delles,* 69 Cal.2d 906, 910 [73 Cal.Rptr. 389, 447 P.2d 629]; *People* v. *Fratianno,* 6 Cal.App.3d 211, 221 [85 Cal.Rptr. 755].) Unless he makes such a motion in the trial court, he is precluded from obtaining relief on appeal. (See *People* v. *Massie,* 66 Cal.2d 899, 910 [59 Cal.Rptr. 733, 428 P.2d 869].) Although Barajas had the time and opportunity to move to set aside his plea of guilty in the trial court, he did not do so. He has failed to preserve the issue, and we are precluded from granting relief on that basis.

### FAILURE TO COMPLY WITH NARCOTIC COMMITMENT STATUTES

In *People* v. *Leonard,* 25 Cal.App.3d 1131 [102 Cal.Rptr. 435], this court recently pointed out that narcotic commitment procedures instituted pursuant to Welfare and Institutions Code section 3051 may not simply be ignored. Contrary to the implication arising from the quoted statements made at the hearing on August 24, such proceedings are not merely an additional file or extra paper work, and they cannot be considered or ignored willy-nilly, irrespective of what has transpired.

The record on appeal indicates, and the superior court narcotic proceedings file (No. 43147) which we have ordered lodged confirms, the improper

procedures followed in *Leonard, supra,* were also followed here. In this aspect, the cases are so strikingly similar that all we said in *Leonard* is applicable here.

The record shows without conflict: (1) the court ordered criminal proceedings adjourned and narcotic commitment proceedings instituted under Welfare and Institutions Code section 3051; (2) doctors were appointed to examine the defendant to determine whether he was addicted to narcotics, or in imminent danger of becoming addicted; (3) the printed portion of the petition filed by the district attorney pursuant to the court's order recited the court was of the opinion the defendant's "record and probation report does [*sic*] not indicate that he would be an unfit subject for commitment"; (4) the examining doctors both reported the defendant was addicted to heroin, but recommended against his commitment to the California Rehabilitation Center because he was not properly motivated and did not wish to go there for treatment; (5) based on the doctors' recommendation, the court declined to proceed with the commitment hearing and eventually sentenced the defendant to prison; and (6) the narcotic commitment proceedings have never been properly terminated and are still pending.

In *Leonard, supra,* 25 Cal.App.3d 1131, we pointed out that Welfare and Institutions Code section 3051 limits the trial court's authority to refuse to commit a narcotics addict to a consideration of whether his record indicates such a pattern of criminality as to make him an unfit subject for commitment. ▮ Commitment to the program is not voluntary and is not dependent upon the defendant's motivation or his desire to participate in it. (P. 1136.) If the defendant is an addict, and otherwise eligible, the section *requires* the judge to commit him to the rehabilitation center irrespective of his lack of motivation or desire, or his unwillingness to cooperate. (P. 1137.) Such attitudes, if they persist, may be a proper basis for the director of the treatment facility to return a committed defendant to the court for further criminal proceedings under Welfare and Institutions Code section 3053, but they are not a basis for rejection at the time of initial commitment. (Pp. 1136-1137.)[1]

▮ Moreover, the narcotic commitment procedures provided for in the Welfare and Institutions Code, when instituted, are separate and distinct from the criminal case. What we said in *Leonard, supra,* is equally appli-

---

[1]A high incidence of resistance by the addict is to be expected in an involuntary drug treatment program. Part of the task of the treating facility is to develop motivation and cooperation. If this cannot be done, the statutes permit the return of the defendant to the criminal court. They make clear, however, that rejection from the program for such reasons lies at the treatment facility level and not with the trial court or with the local examining doctors.

cable to this case. "The statutory scheme does not permit the hybrid, off-again-on-again mixture of civil and criminal proceedings conducted here. Once the court has exercised its discretion to initiate narcotic commitment proceedings under section 3051, it is· without jurisdiction to proceed in the criminal case until those proceedings have been properly terminated." (*People* v. *Leonard,* 25 Cal.App.3d 1131, 1136 [102 Cal.Rptr. 435].) No hearing was ever held in the civil commitment proceedings, and those proceedings were never properly terminated. The court was without jurisdiction to pronounce the judgment of conviction from which Barajas has appealed.

### SUFFICIENCY OF THE SEARCH WARRANT AFFIDAVIT

■ There is no merit to the contention the affidavit supporting the search warrant is insufficient because it was not shown the informants who told the declaring officer they had seen heroin at the defendant's residence knew the appearance of heroin or could recognize it. The affidavit states the first informant had been associated with heroin addicts over a period of years; had seen numerous white paper bindles known to him to be the kind used to package heroin at the residence; and had seen ·persons known to him to be heroin users on the premises, "some of whom he saw injecting narcotics into their arms." The affidavit states the second informant had seen paper bindles in a car driven by Barajas when it was parked in front of the residence, and he had observed Barajas himself injecting narcotics into his arm. In our view this information provided a substantial basis for the magistrate to conclude heroin was probably present at the Barajas home. (*Skelton* v. *Superior Court,* 1 Cal.3d 144, 150 [81 Cal.Rptr. 613, 460 P.2d 485].) To establish the common sense and rational belief the substance seen at the residence was an illegal narcotic does not require the testimony of a forensic chemist.

### OTHER ISSUES

■ What we have said makes it unnecessary to discuss defendant's final contention in detail. Penal Code section 1203 contemplates the inclusion of hearsay matter in the probation report. (*People* v. *Valdivia,* 182 Cal. App.2d 145, 148 [5 Cal.Rptr. 832].) If the report contains hearsay information which the defendant contends is unfair and untrue, he should be given the opportunity to refute it. (Pen. Code, § 1204; *People* v. *Valdivia, supra,* 182 Cal.App.2d 145, 148; *People* v. *Escobar,* 122 Cal.App.2d 15, 20 [264 P.2d 571].) When criminal proceedings are reinstituted in this case, we have no reason to assume the trial court will not afford the defend-

ant an opportunity to refute any detrimental hearsay statements contained in the probation report then submitted.

The judgment of conviction is reversed and the trial court is directed to complete and carry out narcotic commitment proceedings in accordance with the relevant provisions of the Welfare and Institutions Code and the views expressed in this opinion.

Brown (Gerald), P. J., and Whelan, J., concurred.