## MILLER *v.* STATE OF MARYLAND

[No. 265, September Term, 1973.]

*Decided July 26, 1974.*

250

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Stephen L. Miles* for appellant.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court. O'DONNELL, J., dissents and filed a dissenting opinion at page 256 *infra.*

Franklin Miller was indicted by the grand jury on charges of receiving a stolen car, conspiracy, larceny, unauthorized use of a vehicle, and receiving other stolen goods. As a result of "plea bargaining," Miller agreed to plead guilty to the charge of receiving a stolen car, and the State agreed to nol pros the other charges against him. The State also promised, as part of the bargain, to give no recommendation to the court as to sentencing or disposition of the case. The issue before us is whether, as Miller claims, the State breached the terms of the plea bargain by making a recommendation.

At the trial proceedings, after Miller pleaded guilty to receiving one stolen 1970 Chevrolet, the following exchange

took place between Miller and his counsel (emphasis supplied):

> "Q: (Mr. Cahn) Mr. Miller, you and I discussed entering a guilty plea to the second count of Indictment 1649 which charges you with receiving stolen goods, is that correct?
>
> A: Yes sir.
>
> Q: And at that time, that was this morning, I told you that the State's Attorney had agreed that if you would enter a plea to the second count of receiving the State would nol pros all other counts of that Indictment as well as nol pros two other Indictments pending against you, is that correct?
>
> A: Yes sir.
>
>          \* \* \*
>
> Q: And I told you, I think, further that the only other agreement that had been made with the State was that they would make *no recommendation as to your sentencing*, is that correct?
>
> A: Yes sir."

Subsequent examination of Miller satisfied the court that the defendant was aware that he waived certain rights as a result of his plea and that the plea was voluntarily made.

The defendant's attorney then requested the court to order a pre-sentence report. Thereafter, the following dialogue occurred between the court and the prosecuting attorney (emphasis supplied):

> "(The Court): Does the State want to say anything *as to disposition*?
>
> "(Mr. Howard): Well, Your Honor, all I said was *I would not make a recommendation* to you one way or the other, but I do think you may very well benefit by a pre-sentence report. Perhaps even as to relevant details of the offense. More relevant

details I don't know. But, I think you may very well benefit from that."

Sentencing was delayed until a pre-sentence report was obtained. In that report the probation officer recommended a suspended sentence and supervised probation on the condition that the defendant undergo therapy at a mental institution. After Miller's counsel argued in favor of adoption of the report by the court, the following colloquy ensued (emphasis supplied):

"(The Court): Now, does the State want to say anything *with regard to this disposition*?

"(Mr. Howard): No, Your Honor. I agreed as part of our plea bargaining that I would not in this case make a recommendation to this Court. I would just state that *I am not in full compliance with the recommendation of the Probation Officer*, but I have not gone into it that fully."

Thereafter the court rejected the probation officer's recommendation and sentenced Miller to five years' imprisonment.

Upon appeal to the Court of Special Appeals, Miller argued, *inter alia*, that his guilty plea was induced by the State's promise not to make a recommendation as to sentencing, and that the promise was broken. The Court of Special Appeals in an unreported opinion affirmed, holding that the State did not violate the plea bargain. We granted certiorari limited to Miller's contention that the State had breached its agreement.

If a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U. S. 257, 262, 92 S. Ct. 495, 499, 30 L.Ed.2d 427 (1971). In *Santobello*, the defendant pleaded guilty "on condition that no sentence recommendation would be made by the prosecutor." (404 U. S. at 262.) The prosecutor, despite the

bargain, recommended the maximum prison term.[1] The Supreme Court held that the defendant was entitled to relief regardless of whether the breach of the agreement was inadvertent or whether the sentencing judge was influenced by the prosecutor's recommendation.

In the instant case, the defendant's guilty plea rested in part on the prosecution's promise to make "no recommendation" as to "sentencing" or as to "disposition." The probation officer thereafter recommended that the defendant be placed on probation on the condition that he undergo therapy at a mental institution. The prosecuting attorney then stated that he was "not in full compliance with the recommendation of the Probation Officer." When the prosecuting attorney said this, he was advising or suggesting to the judge that the conditional probation recommendation not be completely accepted. This constituted a "recommendation" by the prosecuting attorney as to the "disposition" of the case. Moreover, the prosecuting attorney certainly appeared to be recommending that imprisonment instead of conditional probation be imposed. Absent some further explanation by the prosecuting attorney, the only logical inference that could be drawn from his statement is that he was urging imprisonment rather than probation. The prosecutor's statement was inconsistent with his undertaking to make "no recommendation." *Cf. People v. Barajas,* 26 Cal. App. 3d 932, 935-937, 103 Cal. Rptr. 405, 407-408 (1972); *Wood v. Commonwealth,* 469 S.W.2d 765 (Ky. 1971); *Commonwealth v. Alvarado,* 442 Pa. 516, 276 A. 2d 526 (1971); *State ex rel. Clancy v. Coiner,* 154 W. Va. 857, 179 S.E.2d 726 (1971). As the Supreme Court of Pennsylvania stated in *Commonwealth v. Alvarado, supra,* 276 A. 2d at 529, a prosecutor's promise to make no recommendation as to the sentence reasonably means a "commitment not to make any damning or even potentially damaging statements at the time of sentencing."

Where the State has breached its "plea bargain," there has

---

[1]. A different prosecutor than the one who had negotiated the plea appeared at the sentencing.

been no uniform view among judges and courts concerning the appropriate remedy. In *Santobello,* decided by a court of seven justices, the Chief Justice, joined by Mr. Justice White and Mr. Justice Blackmun, was of the opinion that the ultimate relief should be within the discretion of the state courts, saying (404 U. S. at 263):

> "The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, *i.e.*, the opportunity to withdraw his plea of guilty."

The Chief Justice did not suggest what type of circumstances should lead to one result rather than the other. Mr. Justice Douglas concurred in the Chief Justice's opinion with the caveat that "[i]n choosing a remedy, however, a court ought to accord a defendant's preference considerable, if not controlling, weight . . . ." (*Id.* at 267.) Mr. Justice Marshall, joined by Mr. Justice Brennan and Mr. Justice Stewart, took the position that the defendant had an absolute right to withdraw his guilty plea if he so desired. (*Id.* at 267-269.) Thus, a majority of the Court was of the view that "when the defendant seeks to vacate the plea, that relief should generally be granted." (*Id.* at 268.)

Most state and federal court decisions, both before and after *Santobello,* have held that where the defendant pleads guilty as part of a "plea bargain," and the prosecution breaches the agreement, the defendant should be allowed to withdraw his guilty plea. *See, e.g., White v. Gaffney,* 435 F. 2d 1241 (10th Cir. 1971); *United States v. Graham,* 325 F. 2d 922 (6th Cir. 1963); *Zaffarano v. United States,* 306 F. 2d 707 (9th Cir. 1962); *People v. Barajas, supra; Crossin v. State,* 262 So. 2d 250 (Fla. App. 1972); *People v. Caskey,* 4 Ill. App. 3d 920, 282 N.E.2d 250 (1972); *Wood v. Commonwealth, supra;*

*People v. Bannan,* 364 Mich. 471, 110 N.W.2d 673 (1961); *State v. Wolske,* 280 Minn. 465, 160 N.W.2d 146 (1968); *State v. Hovis,* 353 Mo. 602, 183 S.W.2d 147 (1944); *People v. Farina,* 2 App. Div. 2d 776, 154 N.Y.S.2d 501 (1956), *aff'd* 2 N.Y.2d 454, 141 N.E.2d 589, 161 N.Y.S.2d 88 (1957); *Commonwealth v. Wilkins,* 442 Pa. 524, 277 A. 2d 341 (1971); *Darnell v. Timpani,* 68 Wash. 2d 666, 414 P. 2d 782 (1966); *State ex rel. Clancy v. Coiner, supra. See also* ABA Project on Minimum Standards for Criminal Justice, Pleas of Guilty, § 2.1 (a) (ii)(4) (Approved Draft 1968); Note, *Guilty Plea Bargaining: Compromises By Prosecutors to Secure Guilty Pleas,* 112 U. Pa. L. Rev. 865, 877 (1964); Note, *The Legitimation of Plea Bargaining: Remedies for Broken Promises,* 11 Am. Crim. L. Rev. 771, 792 (1973). The reason the defendant is usually permitted to withdraw his guilty plea, if that is his choice, was expressed by Mr. Justice Marshall in *Santobello* as follows (*id.* at 268):

> "When a prosecutor breaks the bargain, he undercuts the basis for the waiver of constitutional rights implicit in the plea. This, it seems to me, provides the defendant ample justification for rescinding the plea. Where a promise is 'unfulfilled,' Brady v. United States, 397 U.S. 742, 755 (1970), specifically denies that the plea 'must stand.' "

In our view, the better practice, and the one supported by the majority of cases, is to permit the defendant to withdraw the plea. Accordingly, where a guilty plea has been induced by the prosecutor's agreement to make no recommendation as to sentencing, and the prosecutor violates that agreement, the defendant may at his option have the guilty plea vacated. On the other hand, if the defendant so desires, he may elect to leave the plea standing and be resentenced. As the Supreme Court stated in *Santobello v. New York, supra,* 404 U. S. at 263, the resentencing should be by a different judge.

It should be emphasized, however, that if a defendant under these circumstances desires to rescind the plea

bargaining agreement and withdraw his guilty plea, he will have to plead anew to *all* of the original charges, including those which the State had nol prossed. *Santobello v. New York, supra,* 404 U. S. at 263, n. 2.

> *Judgment of the Court of Special Appeals reversed.*
> *Judgment of the Criminal Court of Baltimore vacated, and case remanded for proceedings not inconsistent with this opinion.*
> *Costs to be paid by the Mayor and City Council of Baltimore.*

*O'Donnell, J., dissenting:*

I must vigorously disagree with the result reached by my learned colleagues. The conclusion of the majority is predicated on an inaccurate major premise: "The State also promised as part of the bargain to give no recommendation to the court as to sentencing *or disposition of the case.*" An examination of the transcript of proceedings fails to support a basis for even inferentially finding that the State promised to give no recommendation as to "disposition."

The appellant was charged, jointly with two others, in three indictments — one for "conspiracy to violate the larceny laws of the State of Maryland" (grand larceny of automobiles); a second for "receiving a 1970 Chevrolet knowing it to have been stolen, etc.", and the third — the one under which he pleaded guilty to the second count (receiving another 1970 Chevrolet sedan knowing it to have been stolen) — also charged him with the grand larceny of that vehicle and the larceny of its use. As a result of "plea bargaining" the prosecutor agreed to nol pros the indictment charging conspiracy, the companion indictment charging a separate receiving of stolen goods and the larceny and larceny of use counts in the third indictment.

The facts as the foundation for the indictments which were known to the prosecutor at the time of the "plea bargaining" and as later related to the court were as follows:

"The State would have next called to the stand Detective Sergeant Hughes of the Baltimore City Police Department Criminal Investigation Division, Auto Theft Unit. Sergeant Hughes would have been qualified as an expert in the area of investigation of auto thefts as he has conducted more than three hundred of these investigations in the past several years. He would have testified that he had occasion along with Detective Julius Neveker, Detective Calloway Hatcher and Detective Verba of that same Auto Theft Unit to place a garage on West Forty-first Street — at 2000 West Forty-first Street under observation in the week beginning January 9th, 1972 up until the 19th of January, 1972. And he would have testified, as would his men, that they observed the Defendants in this case, Mr. Gilbert Schaefer, Sr., and Mr. Frank Miller, at that garage at various times during the week beginning January 9th up and until the 19th of January, 1972. They would have testified that they saw these men go into the garage at various times of the day and night and they could observe or hear cutting noises as if metal was being cut by acetylene torches.

The detectives would have testified that they then proceeded to secure a search and seizure warrant on the 18th of January, 1972, from His Honor Judge Lamdin. That would have been tendered as evidence in the case. They would have testified that they went to the location, 2000 West Forty-first Street, and went into the garage and in there they executed the warrant. There was nobody on the premises at the time, but they would have testified that they recovered among other things a license plate of a 1970 Chevrolet automobile, FG-1437, that belonged to a Mr. Fitez of Baltimore and that belonged to an automobile that was taken from him in a larceny the day before. They would have testified that they found three oxygen tanks and an acetylene torch. They would testify that

they found assorted pieces of chrome frame, right and left firewall of an automobile, left door of a gold Chevrolet, the windshield of a Chevrolet, the rear bumper, a front seat of a 1970 Chevrolet, green in color, the front bumper of a 1970 Chevrolet, the front dash and power steering unit and air filter, two snow tires, two brake drums, one Ward's battery, two Delco batteries, fourteen hubcaps, a 1970 front clip, which I believe is the front part of a 1970 Chevrolet, a 1970 V-8 firewall with wheels, one hood, one trailer hitch, nine windshield motors, five umbrellas, one steering assembly, two stands, one two-way radio, one blue baby seat, a car mirror, a torch and hose, and various personal papers that did not belong to either Mr. Miller or Mr. Schaefer. This would have been their testimony.

They would have stated that they displayed one of the umbrellas that was in fact found on the premises to Mr. Lobe and he identified it as one of his umbrellas. In fact, he identified it as the very umbrella that was left in the car belonging to his son and which was registered to Lorraine Lobe that was taken on the 28th of December, 1971 from the 400 block of East Lexington Street. That would have essentially been the State's case, Your Honor.

We would have tendered all of the physical evidence as well as we would have tendered the search warrants and pictures of the scene and location. The testimony by the officers would have been that they had placed Mr. Schaefer and Mr. Miller at that very location for approximately a week to ten days continuously prior to this raid even though both men were not on the premises on the date of the raid."

Additionally the prosecutor had available to him the prior criminal record of the appellant who was 31 years of age, who had been committed in 1955 for his first theft of an automobile and who had been arrested 44 times, convicted

25 times, given "probation before verdict" four times, who had served a term in the House of Correction and who had also been sentenced to a City Jail term.

As a preface to an examination of the appellant about the constitutional rights he was undertaking to waive by his plea of guilty, the following dialogue took place between him and his counsel:

"Q. And at that time, that was this morning, I told you that the State's Attorney had agreed that if you would enter a plea to the second count of receiving the State would nol pros all other counts of that Indictment as well as nol pros two other Indictments pending against you, is that correct? A. Yes sir.

Q. Now, at that time do you recall if I told you the length of sentence that you could get under the second count? A. You did.

Q. And what did I tell you? A. I could get ten years.

Q. And I told you, I think, further that the only other agreement that had been made with the State was that they would make no recommendation *as to your sentencing*, is that correct? A. Yes sir.

Q. And that whatever sentence would be imposed could not exceed that ten year period? A. Yes sir.

Q. And it would be up to Her Honor Judge Jones to determine the length of sentence, is that correct? A. Yes, it is correct."

At the conclusion of that examination counsel and the appellant engaged in the following exchange:

"Q. Now, other than what I told you the State is willing to do as far as nol prossing the cases, the other charges, and making no recommendation *as to sentencing*, has anyone made any promises or threatened you in any way to get you to plead guilty to this count? A. No sir.

Q. Have there been any inducements other than what we have already mentioned to make you plead guilty to this? A. No sir."

The trial court then advised the appellant as follows:

"(The Court) Then the only other thing I want to make clear to you is, Mr. Miller, that, as your counsel pointed out, the *maximum sentence* which could be *imposed is a sentence of ten years* in this case and I have made no promises to anyone as to what will be done in your case with regard to sentence or disposition. Now, do you understand that? A. I do, Your Honor." [1]

After counsel for the appellant made a brief recitation concerning the appellant's background and minimized his prior involvement with the criminal law he requested the court, before sentencing, to "get a probation report in this matter because I think it would aid the Court in any decision or sentence that the Court might decide in this case."

Although the court was then apparently prepared to make disposition in the case, the following dialogue occurred between the court and the prosecutor:

"(The Court) Does the State want to say anything as to disposition?

(Mr. Howard) Well, Your Honor, all I said was I *would not make a recommendation to you one way or the other,* but I do think you may very well benefit by a pre-sentence report. Perhaps even as to relevant details of the offense. More relevant details I don't know. But, I think you may very well benefit from that."

---

1. In informing the defendant of the maximum possible sentence the trial court acted in accordance with ABA Project on Minimum Standards for Criminal Justice, Pleas of Guilty, § 1.4 (c)(i) (approved draft 1968); it might have been better if the court had also, as proposed under § 1.5, *op.cit.,* advised the defendant that the court was not bound by any recommendations by the prosecutor.

When the case came on for disposition before the court and counsel for the appellant made a statement in his behalf concerning the content of the pre-sentence report the court addressed a question to the prosecutor as follows:

"(The Court) Now, does the State want to say anything with regard to this disposition?

(Mr. Howard) No, Your Honor, I agreed as part of our plea bargaining that I would not in this case make *a recommendation* to this Court [as to sentencing]. I would just state that I *am not in full compliance with the recommendation of the Probation Officer,* but I have not gone into it that fully.

It is apparent from the above dialogue that the majority has so equated the representation of the prosecutor that he would make "no recommendation as to sentencing" to conclude that he agreed that he would make no recommendation whatsoever to the trial court. When, at the time of disposition, the prosecutor stated that as part of the plea bargaining he agreed that he would not make a recommendation to the court, such reference is obviously limited — in its context — to the fact that he had agreed to make no recommendation as to the amount of the sentence to be imposed — the length of any sentence.

The trial court, in imposing sentence on the appellant, stated as follows:

"Well, this pre-sentence report goes into quite a bit of detail with regard to Mr. Miller's background, both his prior record as well as some physical problems or emotional problems which you have mentioned. I am not going to reiterate all of the background except I do not know whether the probation officer's numerical count is correct or not. He says there are twenty-five convictions and four probation without verdicts. And the summary takes about two typewritten pages and ranges from disorderly conduct to, well, assault by striking with a hatchet and a number of malicious destruction of

property cases. Mr. Schaefer has been — Mr. Miller, rather, has been in and out of the probation system and, in fact, I believe on a prior occasion while under probation therapy was recommended and he never availed himself of it according to the report.

This present case involves again the property of another citizen, the automobile of Lorraine Lobe which was stolen; and this Defendant has pleaded guilty to receiving this valuable piece of stolen property. And in noting Mr. Miller's background I note that I believe he started with molesting other people's automobiles as far back as 1955 when he was convicted of stealing a car. There was a commitment for that. Probation has been tried before. It, obviously, has not worked. And I would not consider probation at this time. So, Mr. Miller, the sentence is a sentence of five years under the jurisdiction of the Division of Correction which will be from this date since there is no credit to be given for any jail time."

In view of the nature of the facts in the case it would be difficult to conclude other than the appellant was engaged with others in a somewhat professional scheme of stealing automobiles — and in particular 1970 Chevrolets — and dismantling them in order to obtain needed parts from such vehicles. This is all the more so since the appellant since 1956 had been engaged in automobile "body and fender work." In view of these aggravated facts and the appellant's extensive prior police record, it is obvious that when the prosecutor agreed with counsel for the appellant that he would make "no recommendation as to sentencing", he presupposed that the appellant would receive *some* sentence and agreed merely not to recommend the *quantum* of that sentence; he did not violate that agreement.

The holdings in *Santobello v. New York* 404 U. S. 257, 92 S. Ct. 495, 30 L.Ed.2d 427 (1971), have been over-extended to the facts in this case. In *Santobello* the petitioner was indicted in two felony counts, the promotion of gambling in

the first degree and the possession of gambling records in the first degree. After first pleading not guilty the prosecutor agreed to let him plead to a lesser charge — the possession of gambling records in the second degree; he agreed to make "no recommendation as to sentence."

After a series of delays due to the absence of the pre-sentence report, the petitioner retained new counsel who moved to withdraw his prior guilty plea alleging that at the time of the entry of the plea crucial evidence had been obtained against his client by an illegal search. The motion to strike the plea was denied. When the case came on for disposition before a different judge — the judge before whom the plea had been entered having retired — a different prosecutor also appeared and he recommended to the sentencing judge the imposition of a one-year sentence — the maximum allowable for the offense — because of the petitioner's prior record and his association with organized crime. In the within case there was no recommendation by the prosecutor concerning the imposition of any sentence.

In *People v. Barajas*, 26 Cal. App. 3d 932, 103 Cal. Rptr. 405 (1972), counsel for the defendant and a deputy district attorney signed a "change of plea form" in which it was stated that Barajas has not been induced to plead guilty by any promise or representation, etc., except "District Attorney will dismiss the remaining count & to remain silent at the time of sentence." [The latter words were inserted in the printed form in handwriting.] Barajas entered a plea of guilty to the possession of narcotics. A probation report showed his past record, addiction to heroin, his participation in a methadone program and recommended adjournment of the criminal charges and a civil narcotic commitment for examination. Upon receipt of the medical report when the case came on for sentencing the judge stated to the district attorney that "I suppose we ought to make a grant of probation under — for three years — under all the usual terms and conditions, plus the narcotic cases, plus the special condition that he continue on this Methadone program until released." The same deputy district attorney who signed the plea bargaining agreement

then stated to the court that there was an indication that Barajas was dealing in heroin and that there was a charge against him of possessing a firearm which was found in his home at the time of his arrest. He requested a further report from the probation officer regarding the defendant's progress on the methadone treatment program and a continuance was granted. The supplemental probation report contained statements from an agent of the Bureau of Narcotics indicating that Barajas had been and was still involved in selling heroin, was not motivated toward treatment at the California Rehabilitation Center, recommended a denial of probation and the imposition of a sentence. Counsel for the defendant at the hearing strenuously objected to the hearsay statements in the supplemental report and requested the court to "get some testimony under oath on those allegations." The deputy district attorney remained silent and Barajas was sentenced.

The California Court of Appeals held that the deputy district attorney's agreement to remain silent at the time of sentencing was violated by his remarks at the first disposition hearing when he stated to the court that Barajas was dealing in heroin and had firearms in his home which were calculated to, and in fact did, dissuade the court from carrying out its announced intention to place Barajas on probation.

The court held, however, that where the prosecution repudiates its part of the plea bargain the defendant's remedy is to move to withdraw his plea of guilty in the trial court and unless he makes such a motion in the trial court he is precluded from obtaining relief on appeal. The court observed that although Barajas had the time and opportunity to move to set aside his plea of guilty in the trial court he did not do so; he failed to preserve the issue and the court was precluded from granting relief on that basis.

In *Wood v. Commonwealth*, 469 S.W.2d 765 (Ky. 1971), the appellant was indicted for murder. After consultations between her attorney and the Commonwealth attorney she withdrew her not guilty plea and pleaded guilty to an amended charge of "aiding and abetting voluntary

manslaughter." The prosecuting attorney had promised upon such a plea that he would neither oppose nor favor probation. Although at the time of the entry of the plea the prosecutor did not either oppose or favor probation, he objected to and protested any grant of probation to the probation officer. Such protestation was included in the probation officer's report since the trial judge at the time of disposition announced that the Commonwealth attorney had objected to probation. The court held that even though the recommendation of the prosecutor was not binding on the trial court the position taken by him would have had some weight in granting or refusing probation, vacated the sentence, permitted the withdrawal of the guilty plea and ordered a new trial.

*Commonwealth v. Alvarado*, 442 Pa. 516, 276 A. 2d 527 (1971), involved the entry of a guilty plea to charges of murder and rape after the prosecutor promised "not to seek the death penalty." The case came before the Supreme Court of Pennsylvania on a denial of the appellant's petition to withdraw his guilty plea.

The record discloses that the prosecutor never did specifically urge or expressly recommend the death penalty; when asked by the court whether he had any comments to offer on the question of sentence, after relating the facts of the case, he advised the court that the defendant had shown no remorse, had taken actions calculated to deceive the family of the decedent and his friends, had sent the police on a false track, did not ask for forgiveness or for mercy and pointed out that the crime was one of the most vicious in the experience of the court. The three-judge panel, following a degree of guilty hearing, adjudged him to be guilty of murder in the first degree and sentenced him to death. The Pennsylvania court — although there was no recommendation made by the prosecutor concerning the death penalty — in vacating the death sentence and remanding the case for imposition of life imprisonment, went so far as to state: "Here, Alvarado might have reasonably believed that the prosecutor's promise not to seek the death penalty included a commitment not to make any

damning or even potentially damaging statements at the time of sentencing. As so interpreted, that promise was clearly violated." *Id.* 276 A. 2d at 529.

In *State ex rel. Clancy v. Coiner,* 179 S.E.2d 726 (W. Va. 1971), the relators, Clancy and Stern, in a habeas corpus proceeding undertook to have their guilty pleas set aside as a result of misapprehension. Each had pleaded guilty to the possession of marijuana and each had been sentenced to a term of from two to five years. After one of the petitioners and his parents had attended another trial wherein the same offense was charged and the jury had returned a verdict of guilty, they undertook to discuss a possible plea with his counsel. The attorneys left the conference and upon their return within 15 to 20 minutes related to the petitioner and his parents that the prosecuting attorney had agreed that if he entered a plea to the possession of marijuana the charge of the sale of marijuana would be dismissed and that he would recommend to the judge and to the probation officer that Clancy be granted probation and that he, the prosecutor, would not resist probation. Upon his arraignment Clancy pleaded guilty to the charge of possession of marijuana and the court referred the matter to the probation officer for investigation without any opposition from the prosecuting attorney. When the case came up for sentencing Clancy received a term of imprisonment. Under habeas corpus proceedings he contended that the prosecuting attorney had misled him and his counsel in that he had failed to recommend to the judge that he be placed on probation as he had promised to do and as he assured plaintiff's counsel he would do, and as a result thereof his plea was involuntary. The contentions of the relator were submitted to the court by affidavits from his counsel. The affidavit by the prosecuting attorney stated that he related to counsel that he would not resist a motion for investigation and that he did not resist such a motion. That he did not promise Clancy, or his attorneys, or any other person that he would get probation, that such matter was exclusively within the province of the judge.

The court, after pointing out that the prosecutor's

affidavit did not deny that he did promise to recommend that Clancy be placed on probation, held nonetheless that ". . . [P]etitioner Clancy, by reason of certain promises he believed were made, was under the misapprehension that he would receive probation and that by reason thereof he was induced to change his plea from not guilty to guilty of possession of marijuana. In this circumstance the plea was involuntary and the court should have granted the motion for withdrawal of the guilty plea." *Id.* 179 S.E.2d at 731.

The same type affidavits were submitted in connection with the case of the relator Stern which the court found "not to be as forceful as [those] in the Clancy case." In Stern's case his counsel had advised him that he had worked out an agreement with the prosecuting attorney whereby Stern would receive probation if he changed his plea to guilty and would assist the State in other pending cases; his counsel felt that probation was a "sure thing" since both the prosecutor and the judge felt that he would be better off "outside." There was further evidence that in the interval before the arraignment Stern, at the request of his counsel, had journeyed from his home in New York to Morgantown to assist the prosecuting attorney in the prosecution of another defendant in a similar case. In the Stern matter the affidavit of the prosecutor set forth that he did not promise probation. Relief was similarly granted Stern because the court found equally that his guilty plea was made under misapprehension or inducement since he believed an agreement had been entered into between his counsel and the prosecutor, the court holding, in effect, that a guilty plea induced by mistaken belief that a binding plea agreement had been made, even if it is the defendant's own attorney who is responsible for the defendant's mistaken belief, made the plea involuntary.

The facts here are certainly inapposite to those in *Santobello, Barajas* and *Wood.* It appears to this member of the Court that the liberality of the holdings in *Alvarado* and in *Clancy* go much farther than even the majority here would go.

The short of it is that the prosecutor agreed to make no

recommendation as to the amount of any sentence to be given the appellant; his statement at the time of disposition that he was "not in full compliance with the recommendation of the probation officer" was not a violation of his agreement to make no recommendation as to sentence. Unlike the facts in *Barajas*, he did not agree "to remain silent at the time of sentence", nor did he, as in *Wood*, surreptitiously recommend against probation when he had promised that he would "neither oppose nor favor probation." There is no evidence — even by affidavit — from the appellant, as in *Clancy*, of any "misapprehension" that he would receive probation through any communications from his counsel. The holdings in *Alvarado* represent the "outer limits" of an alleged violation by the prosecutor of a bargained plea agreement — in order to vacate a death sentence.

I fully concur in what the Court of Special Appeals said in connection with this contention when, in a per curiam, they stated:

> "In the instant case we perceive no breach of faith by the State, and, consequently, no violation of the principles of *Santobello, supra*. The Assistant State's Attorney did not make a recommendation of sentence either expressly or implicitly. He, in fact, reiterated to Judge Jones that he had agreed to make no recommendation and he was not making one. His further comment that he did not fully agree with the Probation Officer, qualified by the remarks that he had not "gone into it that fully" did not, in our view, transgress the *Santobello* holding. It is apparent that Judge Jones did not agree with the Probation Officer's recommendation either."

I further feel that the majority is also over-reaching when it suggests that "if the defendant so desires, he may elect to leave the plea standing and be resentenced" — and by a different judge. This language from *Santobello v. New York supra*, it would seem, is at best dictum since the majority opinion remanded the case to the New York courts for

"further consideration." The full paragraph by the Chief Justice, who delivered the majority opinion of the Court, is as follows:

> "We *need not reach the question whether the sentencing judge would or would not have been influenced* had he known all the details of the negotiations for the plea. He stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that. Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served *by remanding the case to the state courts for further consideration.* The ultimate relief to which petitioner is entitled we leave *to the discretion of the state court,* which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, *i.e.,* the opportunity to withdraw his plea of guilty.[2] [2. If the state court decides to allow withdrawal of the plea, the petitioner will, of course, plead anew to the original charge on two felony counts.] We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge." 404 U. S. at 262-63. (Emphasis supplied.)

Mr. Justice Douglas in his concurring opinion concerning the "defendant's preference" is equally dictum, for he stated:

> "This is a state case over which we have no "supervisory" jurisdiction; and Rule 11 of the Federal Rules of Criminal Procedure obviously has no relevancy to the problem.

I join the opinion of the Court and favor a constitutional rule for this as well as for other pending or oncoming cases. Where the "plea bargain" is not kept by the prosecutor, the sentence must be vacated and the *state court will decide in light of the circumstances of each case* whether due process requires (a) that there be specific performance of the plea bargain or (b) that the defendant be given the option to go to trial on the original charges. One alternative may do justice in one case, and the other in a different case. In choosing a remedy, however, a court *ought to accord* a defendant's preference considerable, if not controlling weight inasmuch as the fundamental rights flouted by a prosecutor's breach of a plea bargain are those of the defendant, not of the State." 404 U. S. at 266-67. (Emphasis supplied.)

Maryland Rule 749 provides that "If by reason of termination of office, absence, death, sickness, or other disability, the judge before whom an accused has been tried is unable to sentence the accused convicted before him, or is unable to perform the acts and duties to be performed by the court after verdict or finding of guilt, his successor in office or any other judge presiding in or assigned to the court may sentence the accused and perform such acts and duties; . . ."

*See also* Maryland Code (1957, 1971 Repl. Vol.), Art. 27, § 642, which provides that where any person shall have been convicted of any offense and the judge presiding therein shall not have imposed sentence or shall have suspended sentence generally or for a definite time or shall have placed the offender on probation or made such other order or imposed such other terms as he may deem proper and the person should at any time thereafter be brought before the court to be sentenced upon the original charge of his conviction, or for a violation of the terms and conditions of the order of probation in the case, the judge who may then be presiding in that particular court may proceed to

sentence said person. See *Costello v. State,* 240 Md. 164, 213 A. 2d 739 (1965).

The mandate in *Santobello* was for "further consideration" by the New York courts — obviously in accordance with their procedure. The majority in the exercise of the "discretion" referred to in *Santobello* here engrafts a new procedure on our Maryland practice contrary to both Maryland Rule 749, *supra,* and the provisions of the Maryland Code, *supra,* which in multi-judge jurisdictions will give encouragement to "judge shopping" and in those jurisdictions having but a single judge will unduly burden the already over-burdened administration of criminal justice. I would limit any remand to a re-sentencing of the defendant by the trial judge or a vacating of his guilty plea, with a re-arraignment on all the charges pending against him. See *Gill v. State,* 265 Md. 350, 289 A. 2d 575 (1972); *Cochran v. State,* 119 Md. 539, 87 A. 400 (1913) and *McDonald v. State,* 45 Md. 90 (1876).

It must be additionally observed that the docket entries fail to show that the appellant made a motion in the trial court to vacate the sentence or to seek relief from his allegedly illegal sentence under Maryland Rule 764 a.

What the California court said in *People v. Barajas, supra,* seems particularly applicable here since the appellant had the time and opportunity in the trial court to move to set aside his plea of guilty and failed to do so; the issue not having been preserved below it would appear that we are precluded from granting relief on that basis.

The question here submitted and decided was not raised and decided in the lower court. See *Bennett v. State,* 180 Md. 406, 24 A. 2d 786 (1942), where Judge Collins, for the Court, stated:

> "According to the record, the appellant did not object to the sentence imposed by the trial court nor did he move to strike it out or take any proceedings thereon to properly present the question to this court on appeal and therefore as the trial court had jurisdiction, we are prevented from reviewing this

point. Code, 1939, Art. 5, Sec. 10; Rule 4, Court of Appeals of Maryland; *Mitchell v. State,* 82 Md. 527, 34 A. 246; *Novak v. State,* 139 Md. 538, 115 A. 853; *Simonson v. State,* 143 Md. 413, 122 A. 362; *Heyward v. State,* 161 Md. 685, 697, 158 A. 897; *Ex parte General News Bureau, Inc.,* 162 Md. 643, 161 A. 259." *Id.* 180 Md. at 412, 24 A. 2d at 788.

*See also Madison v. State,* 205 Md. 425.

Although this Court granted certiorari on this issue as decided by the Court of Special Appeals, the question does not appear to have been properly before that court under Maryland Rule 1085.